125 F.3d 1263
 97 Cal. Daily Op. Serv. 7325, 97 Daily Journal
D.A.R. 11,802
UNITED STATES of America, Plaintiff-Appellee,
v.
Julie Mae LLOYD, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mack Clarence COLQUITT, Defendant-Appellant.
 Nos. 96-30149, 96-30183.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 10, 1997.
Decided Sept. 11, 1997.
 
 Zenon Olbertz, Tacoma, Washington, for defendant-appellant Lloyd.
 David Zuckerman, Seattle, Washington, for defendant-appellant Colquitt.
 Janet Freeman, Assistant United States Attorney, Seattle, Washington, for plaintiff-appellee.
 Appeal from the United States District Court for the Western District of Washington; Jack E. Tanner, Senior District Judge, Presiding. D.C. Nos. CR-92-01377-JET, CR-92-01377-01-JET.
 Before: WRIGHT, REINHARDT, and THOMAS, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 This case involves an important Speedy Trial Act question. Lloyd and Colquitt were retried in the United States District Court more than a year after their original convictions were overturned on direct appeal. They were originally tried before a jury on one count each of conspiracy to distribute cocaine base and five counts each of distribution of cocaine base. At trial, they admitted selling drugs to a police informant but asserted a public authority defense, arguing that they made the sales in connection with their work as undercover informants for the Tahoma Narcotics Enforcement Team, a police unit in Pierce County, Washington. We reversed their convictions in an unpublished memorandum disposition filed September 15, 1994, concluding that the district court had abused its discretion in cutting off the defendants' questioning of the police officer in charge of their undercover activities. The mandate issued on December 19, 1994. Retrial commenced in district court, before the same district judge, 393 days later, on January 16, 1996. Again, the defendants admitted to making the drug sales, offered a public authority defense, and were convicted on all counts. They now appeal their convictions and their sentences on numerous grounds. Because we conclude that the defendants' speedy trial rights were violated and reverse their convictions for that reason, we do not consider their other claims.
 
 I. BACKGROUND
 
 2
 Under the Speedy Trial Act, 18 U.S.C. §§ 3161-74, retrial "shall commence within seventy days from the date the action occasioning the retrial becomes final." See 18 U.S.C. § 3161(e). The Act sets forth several circumstances, however, under which delays are "excludable" from the computation of that seventy-day period. See 18 U.S.C. § 3161(h). If retrial following an appeal does not commence within seventy days, not counting excludable delays, the indictment must be dismissed either with or without prejudice. See 18 U.S.C. § 3162(a) (made applicable to post-appeal retrials by 18 U.S.C. § 3161(e)). A decision of our court becomes final for purposes of a retrial on the date that the mandate issues. See United States v. Ross, 654 F.2d 612, 616 (9th Cir.1981).
 
 
 3
 In this case, as we noted above, the mandate issued on December 19, 1994.[1] On remand, the district court initially scheduled trial for February 27, 1995. On January 31, 1995, Colquitt filed a motion for a continuance until after May 14, and on February 21, Lloyd also moved for a continuance. On February 23, the district court continued the trial until May 30. Before jury selection began on May 30, Colquitt moved to strike the jury because the venire did not include any minorities. The district court granted that motion and then ordered the trial continued until August 7. On June 2, the government moved to reset the trial for June 19 because an August 7 trial would have commenced outside the seventy-day period provided under the Speedy Trial Act. The district court granted the government's motion on June 7. On June 8, Colquitt moved for a continuance to restore the August 7 trial date, and the district court granted that motion on June 15.
 
 
 4
 On July 3, the government filed a motion to disqualify Colquitt's court-appointed attorney, Wayne C. Fricke, because Fricke had previously represented Jimmy Fernandez, a newly discovered government witness. On July 14, Fricke filed an affidavit stating his belief that his prior representation of Fernandez would interfere with his ability effectively to represent Colquitt. Accordingly, the district court removed Fricke and, on July 18, appointed Richard B. Jones as substitute counsel.
 
 
 5
 On July 28, Jones filed a motion for a continuance. In an accompanying affidavit, Jones stated that he needed additional time to review the case materials and prepare for trial, and also that he had a vacation scheduled for September 1 through September 25. On August 1, Colquitt sent a handwritten letter to the district court.[2] In that letter Colquitt requested that the court appoint Keith MacFie to represent him in lieu of Jones, and then explained that MacFie was aware of Jones' motion for a continuance, and that MacFie "has stated that he does'nt [sic] have a problem with a continues [sic]." It is not clear from the letter whether Colquitt was saying that MacFie did not need a continuance or, rather, that MacFie would not object to one if the court was inclined to grant Jones' motion. On August 3, the district court issued an order granting a continuance until September 25, a date that was more than nine months from the day we issued the mandate. The order stated that the trial was expected to last five days. The district court did not mention Colquitt's letter either in the order or at any other time during the proceedings below.
 
 
 6
 On August 18, Jones filed another motion for a continuance, a supporting affidavit, and a proposed order for a continuance through at least the end of December 1995, with trial to commence on some unspecified date in January 1996. Jones stated in the affidavit that he was "returning to town" from a vacation on September 25, and therefore that he "believes that there is not adequate time to prepare this matter for trial"; however, he did not explain whether he simply needed an extra day or two so that he would not have to start trial on the very day he was returning to town, or whether he instead wanted some unspecified additional period of time to prepare for trial. Jones also stated in his affidavit that Janet Freeman, the Assistant United States Attorney who intended to try the case, and Zenon Olbertz, Lloyd's attorney, would be unavailable at various points during October, November, and December. On the day that he filed the motion to continue, Jones also filed a motion to withdraw and a consent to substitution of counsel. Jones's accompanying affidavit stated that, as Colquitt had previously informed the court, he preferred to be represented by Keith MacFie. The district court did not hold a hearing on either the motion to continue or the motion to withdraw, nor, according to the record, did it attempt to ascertain whether Jones' assertions about Freeman's and Olbertz's schedules were correct. Instead, the district court on September 19 simply filed an order denying the motion to withdraw, granting the continuance, and setting trial for January 16, 1996, a date that was approximately thirteen months from the date the mandate issued, and almost four months from the most recently established trial date.
 
 
 7
 On October 16, Colquitt sent the district court a second handwritten letter. That letter related the following information: (1) Jones filed the first (July 27) motion for a continuance without consulting Colquitt; (2) Colquitt did not discover that the motion had been filed until July 31; (3) the motion to continue "was filed for the benifit [sic] of Mr. Jones [sic] own personal gain"; (4) Colquitt did not consent to the continuance or to any trial date after August 7, nor did he sign a "waiver" of his speedy trial rights;[3] (5) on August 7, Colquitt telephoned Jones, requesting that Jones withdraw because the motion for a continuance Jones filed without Colquitt's consent violated Colquitt's speedy trial rights; (6) Colquitt was not consulted about, and did not consent to, the second (August 18) request for a continuance that Jones filed on his behalf; and (7) Colquitt did not sign any purported "waiver" of his speedy trial rights at that time either. Based upon Jones' "outrageous conduct and misrepresention [sic]," Colquitt once again requested that the court remove Jones and appoint MacFie in his stead. The court apparently never responded to this letter.[4]
 
 
 8
 On December 13, Lloyd, through her attorney, filed a motion to dismiss on the basis of a Speedy Trial Act violation. It appears from the record that the district court never ruled on that motion. On December 18, Colquitt filed a pro se motion to dismiss for a violation of his speedy trial rights and for appointment of new counsel. Along with his motion, he filed a supporting affidavit, a copy of his October 16 letter to the court, and copies of every motion for a continuance, every supporting affidavit, and every "Waiver of Speedy Trial" filed in his name since we remanded following the defendants' first appeal. The government filed an opposition to the defendants' motions to dismiss on December 20.
 
 
 9
 In a letter he sent to Colquitt on December 22, Jones stated that (1) because the court had just denied a motion to withdraw, filed at Colquitt's request, Jones would not file another such motion, and (2) if Colquitt wanted him removed from the case, Colquitt would have to prepare and file a motion on his own. Jones appears to have been unaware of Colquitt's December 18 motion when he sent that letter. On January 4, 1996, Colquitt filed yet another pro se motion to dismiss for a violation of his speedy trial rights and for new counsel. To the motion he attached, inter alia, a copy of Jones' December 22 letter. The district court did not respond to those motions either. On January 16, the day the trial was set to begin, Colquitt renewed both motions orally, once again without any assistance from Jones. The district court denied the motion to dismiss without explanation. It also denied the motion for new counsel, stating that it believed the motion was inconsistent with Colquitt's claim of a speedy trial violation because appointing new counsel would necessitate further delays. Trial commenced, and the defendants were ultimately convicted on all counts. This appeal followed.
 
 II. ANALYSIS
 
 10
 The seventy-day "speedy trial clock" began to run on December 19. There is no serious disagreement that forty-two countable days elapsed between that date and May 30, and that as of May 30 only twenty-eight non-excludable days remained under the Act. The defendants argue that the district court's grant of a continuance from September 25 through January 15 did not qualify for a Speedy Trial Act exception and that the additional 112-day period counts against the speedy trial clock. Because we conclude that the additional period, which in itself substantially exceeds seventy days, is not excludable, we hold that the defendants' rights under the Speedy Trial Act were violated.[5]
 
 
 11
 The district court's order of September 19 purports to make an "ends of justice" finding under 18 U.S.C. § 3161(h)(8), a safety valve provision that permits the district court to toll the speedy trial clock while granting a continuance "if the ends of justice ... outweigh the best interest of the public and the defendant in a speedy trial."[6] Specifically, the district court found that the "ends of justice" exception applied because a continuance was necessary to assure continuity of counsel for both the defendants and the government. The district court's reason for granting the "ends of justice" exception was premised on its assumption that Jones' assertions in his affidavit in support of the motion to continue were correct and that the "facts" Jones reported were unalterable. Jones told the court that Attorneys Freeman and Olbertz were busy at various times during the last three months of 1995, either because of vacations or other plans. The district judge conducted no independent inquiry as to whether (a) the facts recited in the affidavit were true, (b) the apparent scheduling conflicts could be resolved without the necessity of such a long continuance, or (c) the defendants or the government would be prejudiced in any way by a change in counsel.
 
 
 12
 As the House Judiciary Committee explained in its Report recommending passage of the Speedy Trial Act, "the right to a speedy trial belongs not only to the defendant, but to society as well."[7] H.R. Rep. 93-1508, at 15 (1974), reprinted in 1974 U.S.C.C.A.N. 7401, 7408; see also 18 U.S.C. § 3161(h)(8)(A) (recognizing that public has interest in speedy trials independent of defendants's interests). Congress designed the Speedy Trial Act in part to protect the public's interest in the speedy administration of justice, and it imposed the sanction of dismissal under § 3162 to compel courts and prosecutors to work in furtherance of that goal. See United States v. Antonio, 705 F.2d 1483, 1485 (9th Cir.1983) ("An underlying assumption of the Act was that in the long run public justice is eroded by untoward delay between the identification of wrongdoers and the commencement of court proceedings.") (citing H.R. Rep. 93-1508, at 16 (1974), reprinted in 1974 U.S.C.C.A.N. 7401, 7409); see also S. Rep. 93-1021, at 21-22, 42-43 (1974), reprinted in Anthony Partridge, Legislative History of Title I of the Speedy Trial Act of 1974 208 (1980); Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, Guidelines to the Administration of the Speedy Trial Act of 1974, as Amended 63 (Dec. 1979 rev., with amends. through Oct. 1984).
 
 
 13
 We have held that in order to comply with the Speedy Trial Act the district court must satisfy two requirements whenever it grants an "ends of justice" continuance: (1) the continuance must be "specifically limited in time"; and (2) it must be "justified [on the record] with reference to the facts as of the time the delay is ordered." United States v. Jordan, 915 F.2d 563, 565-66 (9th Cir.1990); accord United States v. Clymer, 25 F.3d at 824, 828 (9th Cir.1994); United States v. Pollock, 726 F.2d 1456, 1461 (9th Cir.1984). Thus, the Act imposes strict specificity requirements for the "ends of justice" exception; if the district court fails to comply with them, the period of time covered by the continuance will not constitute an excludable delay. Because the district court's September 19 order clearly stated that trial would commence on January 16, 1996, the first prong of the test is satisfied. The only question we consider, therefore, is whether the district court stated " 'specific factual circumstances' " sufficient to justify its conclusion that the trial it estimated would last five days could not have commenced prior to January 16. Jordan, 915 F.2d at 565 (citation omitted).
 
 
 14
 The sole basis in the record for the district court's conclusion that the continuance was warranted was the affidavit Jones filed in support of the August 18 motion to continue. That affidavit reads in whole:
 
 
 15
 RICHARD B. JONES, being first duly sworn on oath deposes and states:
 
 
 16
 1. On July 18, 1995, your affiant was appointed to represent the defendant on charges of Conspiracy to Distribute Cocaine Base and 5 counts of Distribution of Cocaine Base. Presently, this case is scheduled for a Jury Trial on September 25, 1995.
 
 
 17
 2. Your affiant is currently scheduled to be on vacation from September 1, 1995 through September 25, 1995. Your affiant will be returning to town on September 25, 1995, the day of the scheduled trial date. Your affiant believes that there is not adequate time to prepare this matter for trial.
 
 
 18
 4. [sic] Your affiant is advised that the government has no objection to a continuance of the defendant's trial. However, Assistant United States Attorney, Janet Freeman, will be on vacation from October 3, 1995 to October 31, 1995. Additionally, she is currently scheduled to begin a two week trial on November 7, 1995.
 
 
 19
 5. Your affiant is further advised that Zenon Olbertz, attorney for Julie Mae Lloyd is unavailable the end of November, 1995 and December, 1995.
 
 
 20
 6. For all of the above reasons, your affiant is requesting a continuance of the current trial date to January, 1995.
 
 
 21
 Based upon that affidavit, the district court made the following findings of fact and reached the following conclusions of law:
 
 
 22
 The current trial date is September 25, 1995.
 
 
 23
 Counsel for defendant Colquitt has a scheduling conflict with that date. Counsel for defendant Lloyd and the government have scheduling conflicts with later dates.
 
 
 24
 The ends of justice served by the grant of a continuance in this matter outweigh the best interests of the public and the defendant in a more speedy trial because to deny the requested continuance would deny both the defendants and the government continuity of counsel. 18 U.S.C. § 3161(h)(8)(A) and (B)(iv).
 
 
 25
 Defendant's Motion to Continue Trial Date is GRANTED. The new trial date is January 16, 1996 at 9:30 a.m.
 
 
 26
 For two reasons, we hold that the district court clearly erred in concluding on the basis of Jones' statements that the continuance fell within the "ends of justice" exception.
 
 
 27
 First, we conclude that the district court did not make the required independent findings "with reference to the facts as of the time the delay [was] ordered." Jordan, 915 F.2d at 566. The district court may not simply credit the vague statements by one party's lawyer about the possible scheduling conflicts or general desires for a continuance of the other parties or their attorneys; instead, it must conduct an appropriate inquiry to determine whether the various parties actually want and need a continuance, how long a delay is actually required, what adjustments can be made with respect to the trial calendars or other plans of counsel, and whether granting the requested continuance would "outweigh the best interest of the public and the defendant[s] in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). Here, the only facts the district court recited as a basis for concluding that a continuance was warranted were that Jones had a scheduling conflict on a single day, September 25, and that Freeman and Olbertz had scheduling conflicts with "later dates." Those findings are woefully inadequate to constitute "specific factual circumstances," and do not comply with the statutory requirements. Jordan, 915 F.2d at 565. By themselves, therefore, the district court's findings could not justify any excludable delay beyond the single day of September 25, and they certainly could not begin to justify the additional 112-day delay the district court actually allowed.
 
 
 28
 According to the record, the district court conducted no independent inquiry and made no attempt to verify that the statements Jones made about Freeman's and Olbertz's schedules were accurate, much less determine whether any scheduling problems that actually existed could be resolved without unduly delaying the trial. The district court simply accepted Jones' claims that Freeman had vacation plans in October and a trial in November, as well as his vague assertion that Olbertz "[was] unavailable the end of November, 1995 and December, 1995," and then assumed that no changes could be made in any of the contemplated arrangements. Neither Lloyd nor the government joined in Jones' request for a continuance, and neither Olbertz nor Freeman confirmed for the district court that the facts recited in the affidavit were correct. They were, of course, under no obligation to do so. Rather, the Speedy Trial Act places the burden directly on the district court to conduct whatever factual inquiry is necessary to determine for itself whether the parties require--or even desire--any continuance at all, and, if so, whether the reasons for granting such a continuance are sufficient to "outweigh the best interest of the public and the defendant[s] in a speedy trial." 18 U.S.C. § 3161(h)(8)(A)-(C); see Clymer, 25 F.3d at 828; Jordan, 915 F.2d at 565; Pollock, 726 F.2d at 1461.
 
 
 29
 The district court was not entitled to rely on the unverified claims Jones made about the schedules of other parties' lawyers, nor was it entitled, even if those claims were demonstrably accurate, to treat them, without further inquiry, as sufficient under the Speedy Trial Act for purposes of an excludable delay.[8] Instead, when the district court received Jones' affidavit, it should have inquired as to whether any of counsel's plans could be changed, whether all trial dates and vacation plans were firm and inflexible, whether one or more cases could be "trailed," and whether other circumstances were such that an "ends of justice" exception would be called for, bearing in mind that the district court itself estimated that the trial would last only five days.[9] See, e.g., Jordan, 915 F.2d at 565. Moreover, it appears from the affidavit that there may have been periods between September 25 and January 16 when a five-day trial could have been held while still fully accommodating counsel's purported schedules. Even a cursory inquiry by the district court would have resolved this question.
 
 
 30
 Second, and equally important, the district judge's sole rationale for the continuance--that it was necessary in order not to "deny both the defendants and the government continuity of counsel"--is wholly unsupported by the record. The Speedy Trial Act provides that a continuance may be granted when the failure to do so would "unreasonably deny the defendant or the Government continuity of counsel." 18 U.S.C. § 3161(h)(8)(B)(iv) (emphasis added). There must, however, be some substance to the prior attorney-client relationship before its continuity can be of significance and a denial can be "unreasonable."
 
 
 31
 There was never any genuine attorney-client relationship established between Colquitt and Jones, and Colquitt did not wish whatever "relationship" there was to continue. In short, Colquitt had no interest in continuity of counsel to preserve. Jones did not handle the first trial, and had not performed any of the pre-trial work that preceded the second trial. He was newly appointed, and Colquitt wanted to terminate his services and substitute MacFie's. Jones had only one phone conversation and one meeting with Colquitt prior to the granting of the continuance at issue here. According to the record, Colquitt left a telephone message for Jones on July 20, 1995, two days after Jones was appointed Colquitt's counsel. The message informed Jones that Colquitt wanted to be represented by MacFie. Instead of returning Colquitt's call, Jones filed the first motion for a continuance on July 28, without Colquitt's knowledge or consent. Then, on July 31, Jones met with Colquitt for approximately four hours, during which meeting he attempted to convince Colquitt that he was competent to handle the case. Although Jones stated in the affidavit supporting his August 18 motion to withdraw that by the end of the meeting Colquitt was "satisfied with [Jones'] ability to represent him," the very next day Colquitt drafted his first letter to the district court requesting that Jones be removed and MacFie be appointed in his stead. On August 7--the day the trial would have commenced but for the continuances--Colquitt telephoned Jones requesting that Jones withdraw because "the motion he had filed with out [sic] my consent violated my right to a speedy trial." On August 18, Jones filed the second motion for a continuance, again without Colquitt's knowledge or consent, as well as a motion to withdraw.
 
 
 32
 When the district court received Jones' second motion for a continuance, the only information it had before it regarding Jones' representation of Colquitt was (a) that Colquitt wanted Jones removed; and (b) that Jones, a newly appointed lawyer, was not ready to go to trial, wanted time to prepare, and had a vacation scheduled that would further delay the proceedings. On those facts, and especially in light of the fact that Colquitt expressly stated to the court that he did not want Jones to represent him, the district court could not have concluded that Colquitt had any interest in continuity of counsel, let alone one that could outweigh his speedy trial rights as well as those of his co-defendant and the public. This would hold true even if there had been some evidence in the record from which the district court could have inferred that an attorney-client relationship had been formed between Jones and Colquitt. When, as here, the defendant repeatedly asserts his speedy trial rights and makes clear that he does not want the continuance that his lawyer has requested, the district court must at a minimum conduct a far more probing inquiry into the continuity of counsel question.
 
 
 33
 As for the government's interest in continuity of counsel, we seriously doubt that where forty-two countable days have already passed, previously scheduled trials or vacations could ever support a two month 'ends of justice' delay. While continuity of counsel for the prosecution may be generally desirable, whether it is a sufficient basis to warrant a delay in any individual case will depend upon a number of factors, including, (1) the size of the prosecutor's office, (2) whether there is another qualified prosecutor available, (3) how much special knowledge the first prosecutor has developed about the case, (4) how difficult the case is, and (5) how different it is from other cases generally handled by the particular United States Attorney's office.
 
 
 34
 The district court in this case engaged in no analysis of any of the relevant factors, and most of the necessary information does not appear on the record. Thus, the district court had no basis for determining whether the government's interest in continuity of counsel was sufficient to necessitate a continuance. Under those circumstances, the interest in continuity of government counsel could not outweigh the interests of all the other parties and the public in a speedy trial. Moreover, had the district court made the requisite inquiry, it is clear that it could not have concluded that a continuance of the trial until thirteen months after the mandate issued would qualify under the "ends of justice" exception. Freeman did not try the case the first time, nor did she litigate the first appeal; instead, she took over the case some three months (and forty-two countable days) after the mandate issued. The matter was not particularly complex or unusual, and there is no reason to suspect that another prosecutor would have been unable to try the case with a reasonable amount of preparation.
 
 
 35
 Because, for all the reasons given above, we hold that the delay from September 25 through January 15 was not excludable, we conclude that at least 154 countable days passed before the trial commenced--more than double the permissible period. Accordingly, there was a clear Speedy Trial Act violation.
 
 III. DISMISSAL OF INDICTMENT
 
 36
 Because a violation occurred, the Speedy Trial Act requires dismissal of the indictment. See 18 U.S.C. § 3162(a)(2). The Act also requires a determination as to whether the dismissal is with or without prejudice, taking into account the factors set forth in § 3162(a)(2). Although we are free to dismiss with prejudice and will do so under appropriate circumstances, see, e.g., Clymer, 25 F.3d at 831, our usual practice is to remand to allow the district court to decide in the first instance the type of dismissal that is appropriate, see Jordan, 915 F.2d at 566. Here, we vary our usual practice slightly and reassign the case to a different district judge solely for the purpose of making the dismissal determination. We do so in our supervisory capacity, see 28 U.S.C. § 2106, and out of a concern for the appearance of fairness, see Smith v. Mulvaney, 827 F.2d 558, 563 (9th Cir.1987) (in determining whether remand to different judge is proper, court considers "whether reassignment is advisable to preserve the appearance of justice"); see also California v. Montrose Chem. Corp., 104 F.3d 1507, 1521 (9th Cir.1997) (quoting Mulvaney, 827 F.2d at 562-63). We believe that reassignment is desirable after two successive reversals based on judicial error, where the question is the remedy to be afforded for the second error-- i.e., what should be the consequences of the district judge's failure properly to implement the provisions of the Speedy Trial Act?
 
 
 37
 We have no doubt that the district judge in this case would be fair in choosing the appropriate remedy were the decision left to him. He complied fully with our directions on the first remand, and our reassignment of the case for this limited purpose in no way results from any concern about actual bias or lack of fairness on his part. Nevertheless, the appearance of fairness warrants the exercise of independent judgment with respect to the selection of the remedy. We emphasize, without indicating any view on whether a third trial would be appropriate, let alone permissible, that reassignment is solely for the purpose of making the remedy determination, and that, if any other proceedings occur, they may be handled by the district judge who handled the first two trials.
 
 
 38
 CONVICTIONS REVERSED, INDICTMENT DISMISSED, CASE REMANDED WITH INSTRUCTIONS TO REASSIGN FOR LIMITED PURPOSE ONLY.
 
 
 
 [1]
 The government in the proceedings below and the defendants in their opening briefs on appeal erroneously treated December 9, 1994, as the date on which the mandate issued. The government now contends, equally erroneously, that the mandate issued on December 22, the date that it was received by the district court. The relevant date for purposes of § 3161(e) is the date the mandate issues and not the date that the district court receives it. See United States v. Crooks, 826 F.2d 4, 5 (9th Cir.1987)
 Defendants in their reply brief ask us to apply judicial estoppel and hold the government to its earlier assertion that December 9 is the relevant date, while the government continues to argue that we should use the December 22 date. We decline to do either. It is absolutely clear from the Clerk's file stamp that the mandate issued on December 19. If either party had any doubt as to that fact, it could have determined the correct date by telephoning the Clerk's office.
 
 
 [2]
 The district court's file stamp shows that the letter was filed on August 2
 
 
 [3]
 The record contains a "Waiver of Speedy Trial" signed by Colquitt for each continuance requested by his prior lawyer but contains no such document for either of the continuances requested by Jones
 
 
 [4]
 The original letter does not appear in the district court record. However, the record does contain a photocopy of it that Colquitt filed as an attachment to a subsequent pro se motion
 
 
 [5]
 Although the parties dispute whether certain other periods prior to September 25 are excludable, because we conclude that a violation occurred regardless of whether those periods are counted, we need not consider the question here
 
 
 [6]
 The Speedy Trial Act provides, in relevant part, for the exclusion of:
 (A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.
 (B) The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:
 ....
 (iv) Whether the failure to grant such a continuance ... would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.
 (C) No continuance under subparagraph (A) of this paragraph shall be granted because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government.
 18 U.S.C. § 3161(h)(8)(A)-(C).
 
 
 [7]
 For that reason, and in accord with clear legislative intent, we have held, for example, that "[t]he parties cannot stipulate to a waiver of the protections of the Speedy Trial Act." United States v. Berberian, 851 F.2d 236, 239 (9th Cir.1988). See generally S.Rep. No. 96-212, at 28-29 (1979) (construing Act as allowing defendants to waive their speedy trial rights is "contrary to legislative intent and subversive of [the Act's] primary objective: protection of the societal interest in speedy disposition of criminal cases")
 
 
 [8]
 Had the affidavit included sufficiently specific facts that Jones was competent to assert, however, the district court would have been entitled to rely on it in conducting the required "full-scale" "ends of justice" analysis. See United States v. Gallardo, 773 F.2d 1496, 1506 & n. 14 (9th Cir.1985) (rejecting argument that continuances were not excludable by virtue of being based on scheduling convenience of court where they in fact resulted from defendant's justifiable requests for additional time to prepare for trial). Similarly, had a full-scale "ends of justice" analysis revealed that the defendants had a legitimate need for a continuance in order adequately to prepare for trial, the continuance would be excludable. See 18 U.S.C. 3161(h)(8)(B)
 
 
 [9]
 With regard to the period from January 1 through January 15, the violation is even more flagrant. Jones' motion and affidavit merely suggested that trial be set to commence sometime in January, and no reason was ever offered that might in any way support a continuance for those fifteen days