**UNITED STATES of America,
Plaintiff–Appellee,**

v.

Alejandro **RAMIREZ–CORTEZ,** aka Martin Ramirez–Cortez, aka Julio Ceasar Martinez, Defendant–Appellant.

No. 98–50774.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 14, 1999

Filed May 25, 2000

David J. Zugman, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

George D. Hardy, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: THOMAS, SILVERMAN, and WARDLAW, Circuit Judges.

Opinion by Judge WARDLAW; Dissent by Judge SILVERMAN.

WARDLAW, Circuit Judge:

At issue is the application of the Speedy Trial Act in the context of the Southern District of California's "fast-track" program for expediting illegal re-entry cases. Alejandro Ramirez–Cortez ("Ramirez–Cortez")[1] was convicted of violating 8 U.S.C. § 1326 (1994), being a deported alien found in the United States after conviction for an aggravated felony. He contends that his conviction should be reversed because the eighty-five day delay between his arrest and his indictment violated the preindictment provision of the Speedy Trial Act, 18 U.S.C. § 3161(b) (1994). The district court excluded the delay from its Speedy Trial Act calcula-

tion, retroactively finding that the thirty-day preindictment time period was tolled by Ramirez–Cortez's requests for continuances. We have jurisdiction pursuant to 28 U.S.C. § 1291 (1994). Because we conclude that the exclusions of time were not supported by adequate and simultaneous findings on the record as required by our case law, we reverse.

I.

On December 4, 1997, San Diego Police officers detained Ramirez–Cortez on suspicion of driving while under the influence of alcohol. See Cal. Veh.Code § 23152 (West Supp.1999). Law enforcement officials determined that Ramirez–Cortez was in the United States illegally following a prior deportation, and so informed the Immigration and Naturalization Service ("INS"). An INS records check indicated that Ramirez–Cortez had been deported on June 24, 1997, and had prior convictions for burglary, petty theft, transportation and sale of a narcotic controlled substance, residential burglary, and false personation.

On December 24, the government obtained a one-count complaint charging Ramirez–Cortez with violating 8 U.S.C. § 1326, and an arrest warrant. Ramirez–Cortez was arrested on December 30 and made his first appearance, in custody, before Magistrate Judge James F. Stiven on January 8, 1998. Magistrate Judge Stiven set a preliminary hearing for January 22.

On January 21, the day before the preliminary hearing, the government sent a proposed plea agreement to Ramirez–Cortez's attorney in accordance with the Southern District's "fast-track" policy. The fast-track policy was instituted to expedite resolution of the large number of illegal re-entry cases in the Southern District of California. See United States v. Chavez–Garcia, 16 F.Supp.2d 1190, 1191 (S.D.Cal.1998). As we have explained:

> Under the fast-track policy, defendants [charged with violating 8 U.S.C.

---

1. Ramirez–Cortez was charged as Martin Ramirez–Cortez.

§ 1326(b) ] may enter a pre-indictment guilty plea to a violation of [8 U.S.C.] § 1326(a), which carries a 2–year sentence. The policy requires that the defendant waive indictment, enter a guilty plea at the first appearance before the district court, waive appeal of all sentencing issues, stipulate that the applicable guideline range exceeds the 2–year statutory maximum, stipulate to the 2–year sentence, and agree not to seek any downward adjustments or departures.

*United States v. Estrada–Plata,* 57 F.3d 757, 759 (9th Cir.1995).[2] The fast-track timeline often necessitates continuances beyond the thirty-day pre-indictment period required by the Speedy Trial Act:

> Typically, the government makes a plea offer contingent upon acceptance prior to the issuance of an indictment. After an indictment is returned, the offer is rescinded. To allow more time for considering the offer, defendants often move to continue the proceedings.... As part of the agreement, defendants agree to exclude the continuance period from the 30–day [Speedy Trial Act] period.

*Chavez–Garcia,* 16 F.Supp.2d at 1191.[3]

On January 22, 1998, Ramirez–Cortez, personally and through his counsel, Mayra Garcia,[4] requested a six-week continuance of the preliminary examination to "work on a plea agreement." Magistrate Judge Stiven granted the continuance in the following exchange:

> MS. GARCIA: For Mr. Ramirez–Cortez, we'd like a six-week continuance, your Honor, so we could work on a plea agreement.

THE COURT: All right, and that will take you till March 3rd. Is that agreeable?

MS. GARCIA: Yes, your Honor.

THE COURT: All right, gentlemen, counsel here today in each of your cases have requested that the hearing that was scheduled for today be delayed.

. . . .

THE COURT: Or [sic] Mr. Ramirez–Cortez, the delay would be six weeks until the 3rd of March. Are each of you in agreement with the requested delay?

THE DEFENDANTS: (Through interpreter) Yes.

THE COURT: All right. Then I'll order the time excluded and order the hearings set over....

The courtroom deputy filled out a pre-printed sheet which memorialized the January 22 hearing. She marked spaces indicating that time would be excluded pursuant to 18 U.S.C. § 3161(h)(8)(B)(i). On March 26, Judge Stiven initialed another pre-printed form, again indicating that the period from January 22 to March 25 would be excluded under section 3161(h)(8)(B)(i).

On March 3, 1993, following the six-week continuance, Ramirez–Cortez, personally and through counsel, requested another "time waiver" and continuance of two weeks and two days so that he could "further investigate a derivative citizenship claim." Magistrate Judge Stiven ordered the time excluded and set a new preliminary hearing date of March 19, 1998. On March 19, 1998, having been informed that Ramirez–Cortez had decided not to accept the fast track disposition, Magistrate

---

**2.** The Supreme Court's recent decision in *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), may have required changes in the precise workings of the fast-track program. In *Almendarez–Torres,* the Court held that 8 U.S.C. § 1326(b)(2) is not a separate crime, but merely a penalty provision permitting a sentencing enhancement for a defendant convicted under 8 U.S.C. § 1326(a) with a prior violent felony conviction.

**3.** A fast-track timeline prepared by the government and submitted by the appellant indicates that indictment should occur on the fifty-first day after arrest. The timeline apparently is based on the assumption that the defendant would stipulate to time exclusion under the Speedy Trial Act.

**4.** Ramirez–Cortez was represented by attorney David Zugman. Attorney Mayra Garcia filled in for Zugman at the January 22 hearing.

Judge Stiven reset the preliminary hearing date for March 26, 1998. On March 25, 1998, a federal grand jury returned an indictment against Ramirez–Cortez, charging him with being a deported alien found in the United States, in violation of 8 U.S.C. § 1326.

On May 4, 1998, Ramirez–Cortez moved to dismiss the indictment for violation of the Speedy Trial Act. District Judge Irma E. Gonzalez denied the motion on June 1, 1999, finding that the time on the speedy trial clock had been excluded. Judge Gonzalez explained:

> Judge Stiven did make a finding of excludable time. He didn't specify, I agree, all of the reasons why he was excluding time. But I can draw the inference, and I find that the only reason that it would have been was that it served the best interests of justice....
>
> ... it was for the defense attorney to have time to be able to consider everything that the defense attorney needed to consider in order to be able to do his or her job in advising the client.
>
> . . . .
>
> And so I find that there was excludable time, and so the Speedy Trial Act was tolled, because under the end-of-justice [sic] provision there is-that a judge can exclude time if the defendant needs time to investigate matters to be able to make a determination about the facts of the case and to go through the discovery and to prepare.

The case went to trial in July and the jury found Ramirez–Cortez guilty. Judge Gonzalez sentenced him to seventy-seven months in prison and three years supervised release. This appeal followed.

## II.

■■■ We review a district court's application of the Speedy Trial Act de novo. *See United States v. Hall,* 181 F.3d 1057, 1061 (9th Cir.1999). We review factual findings supporting an "ends of justice" exclusion for clear error. *See United States v. Nelson,* 137 F.3d 1094, 1108–09

(9th Cir.), *cert. denied,* 525 U.S. 901, 119 S.Ct. 232, 142 L.Ed.2d 190 (1998).

The Speedy Trial Act requires that "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b) (1994). However, certain "periods of delay shall be excluded in computing the time within which an information or an indictment must be filed." *Id.* § 3161(h). The Act enumerates several specific types of excludable delay, *see id.* § 3161(h)(1)-(7), (9), and also allows exclusion "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(8)(A). Such "ends of justice" findings must be "set[ ] forth, in the record of the case, either orally or in writing." *Id.* In addition, the Act states that, "in determining whether to grant a continuance," the court "shall consider" the following four nonexclusive factors:

(i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

(iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must

base its determination are unusual or complex.

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

*Id.* § 3161(h)(8)(B).

■ Summarizing the requirements of the Speedy Trial Act, we have stated that an "ends of justice" exclusion must be (1) "specifically limited in time" and (2) "justified [on the record] with reference to the facts *as of the time the delay is ordered.*" *United States v. Lloyd,* 125 F.3d 1263, 1268 (9th Cir.1997) (quoting *United States v. Jordan,* 915 F.2d 563, 565–66 (9th Cir. 1990) (alteration in original, emphasis added)).

■ Although the six-week continuance was limited in time, the Magistrate Judge failed to make the requisite Speedy Trial Act findings at the time he ordered the delay. The hearing transcript shows that the court simply approved Ramirez–Cortez's request for a six-week continuance "so [the parties] could work on a plea agreement." The Magistrate Judge made no inquiry into the need for the continuance. Nor does the record indicate any consideration of the "ends of justice" factors. *See Lloyd,* 125 F.3d at 1269 (the district court "must conduct an appropriate inquiry to determine whether the various parties actually want and need a continuance, how long a delay is actually required, what adjustments can be made

with respect to the trial calendars or other plans of counsel, and whether granting the requested continuance would 'outweigh the best interest of the public and the defendant[s] in a speedy trial.'" (citation omitted)). Not only was a particularized inquiry as to the actual need and reasons for a continuance not made, the transcript reveals that the Magistrate Judge was granting blanket continuances.[5] Moreover, the court twice indicated—both times by checking off boxes on pre-printed forms—that the time would be excluded under section 3161(h)(8)(B)(i), but failed to make findings as to the statutory factors underlying that conclusion. Finally, the record is devoid of any basis for concluding that "the failure to grant [the] continuance would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice." *See* § 3161(h)(8)(B)(i).

■ In denying Ramirez–Cortez's motion to dismiss, the district court acknowledged the lack of findings in the record but nevertheless "inferred" that the Magistrate Judge intended to make an "ends of justice" finding. The district court then concluded that the time was properly excluded because of defense counsel's need to prepare, presumably referring to section 3161(h)(8)(B)(iv). We have held that "[s]imultaneous ['ends of justice'] findings [are] unnecessary so long as the trial court later shows that the delay was motivated by proper considerations." *United States v. Bryant,* 726 F.2d 510, 511 (9th Cir.1984); *see also United States v. Clymer,* 25 F.3d 824, 828–29 (9th Cir.1994). The district court judge, a different judge than the Magistrate Judge who excluded the time, could not make that showing here. Be-

---

**5.** It appears that at least three defendants' continuances were being simultaneously considered at the January 22 hearing. The transcript includes many "pause[s] for matter[s] pertaining to other Defendants." Of course, there was only one defendant—Ramirez–Cortez—in Ramirez–Cortez's case. The Magistrate Judge asked whether, "each

of" the defendants were "in agreement with the requested delay" and then ordered "the hearings set over." The Magistrate Judge granted continuances in the Martinez case and the Martin case at the same time—indeed in the same breath—as he granted the continuance in Ramirez–Cortez's case.

cause the Magistrate Judge who granted the two continuances failed to make any findings, the district court faced an insurmountable hurdle in her effort to determine whether the "delay was motivated by the proper considerations." The district court was in no better position than we to speculate as to the "findings" that might support an "ends of justice" continuance under section 3161(h)(8)(B)(iv). *Cf. United States v. Frey*, 735 F.2d 350, 352 (9th Cir.1984) (district judge "could not have granted the delay 'based on' the required findings concerning the ends of justice, because he did not realize that he was granting a delay"). Moreover, the district court's finding that section 3161(h)(8)(B)(iv), which allows exclusion when the time is needed for "effective preparation," motivated the exclusion is belied by the only evidence of the Magistrate Judge's motivation that we do have, the pre-printed forms on which the court clerk and Magistrate Judge checked the space indicating that the delay was granted under section 3161(h)(8)(B)(i). This is a separate provision which allows exclusion of time if failure to exclude time would "likely make a continuation of such proceeding impossible" or would "result in a miscarriage of justice." Therefore, the district court's post hoc evaluation of the considerations it believed should have motivated the Magistrate Judge does not cure the lack of simultaneous findings.

▬▬ The government argues that the district court's grant of the six-week continuance must be analyzed in light of the fast-track policy. Such continuances are routine, the government contends, and ultimately promote the efficient resolution of litigation. While the overarching goals of the fast-track policy may indeed serve to expedite the prosecution of the numerous section 1326 cases on the docket in the Southern District of California, using the mere existence of the program to justify automatic exclusions of time in every section 1326 case would be at odds with a primary purpose of the Speedy Trial Act. As we have repeatedly stated, "Congress did not intend the 'ends of justice' exclu-

sion to be granted as a matter of course but rather to be used sparingly and only when necessary." *United States v. Lewis*, 980 F.2d 555, 560 (9th Cir.1992) (citing *United States v. Jordan*, 915 F.2d 563, 565 (9th Cir.1990); *United States v. Martin*, 742 F.2d 512, 514 (9th Cir.1984)); *see also Clymer*, 25 F.3d at 829 ("the 'ends of justice' exclusion in section 3161(h)(8) is not to be routinely applied, and ... may not be invoked in such a way as to circumvent the time limitations set forth in the Act."). We do not doubt the government's contention that the fast-track program is an important element of section 1326 prosecutions in the Southern District. Nevertheless, the Speedy Trial Act requires case-by-case findings.

More importantly, in this case, the fast-track program is not part of the record. While the parties provided the Court with substantial information regarding the fast-track program *on appeal,* the program was not cited as a basis for the continuances granted by the Magistrate Judge or for the exclusion of time found by the district court. This case does not present the issue and we do not decide whether specific reference to the fast-track program in an individual case would support an "ends of justice" exclusion. On this record, however, which includes no reference to the fast-track program, we conclude that the fact that the program exists does not justify such an exclusion.

▬▬ Even if we were to conclude that the district court somehow gleaned from the record proper considerations relied upon by the Magistrate Judge, our Speedy Trial Act jurisprudence would compel us to find a violation. The only articulated grounds that the Magistrate Judge could have relied upon was the defendant's desire to engage in additional plea negotiations. We have held, however, that "[n]egotiation of a plea bargain is not one of the factors supporting exclusion." *United States v. Perez–Reveles*, 715 F.2d 1348, 1352 (9th Cir.1983). Other circuits have rejected this rule. *See United States*

*v. Van Someren,* 118 F.3d 1214, 1218–19 (8th Cir.1997) (stating that "ends of justice" exclusion and section 3161(h)(1) may in some cases permit continuation for plea negotiations); *United States v. Fields,* 39 F.3d 439, 445 n. 7 (3d Cir.1994) (discussing and rejecting *Perez–Reveles* rule).[6] While there may be good reasons for allowing the need for plea negotiations to factor into the "ends of justice" analysis, particularly in the context of just and efficient handling of the overwhelming number of section 1326 cases in the Southern District of California, we feel constrained to adhere to our circuit's prior precedent.[7] In another context,[8] the appropriate way to revisit the *Perez–Reveles* rule would be through the en banc process.

■ Finally, we reject the government's contention that Ramirez–Cortez forfeited his right to invoke the Speedy Trial Act by stipulating to the continuance. Both the text of the Speedy Trial Act, *see* § 3161(h)(8)(A) (referring to delay "at the request of the defendant or his counsel"), and our precedent, *see, e.g., Lloyd,* 125 F.3d at 1268, mandate the conclusion that a defendant cannot "waive" time under the

Speedy Trial Act. As we explained in *Lloyd,* "the right to a speedy trial belongs not only to the defendant, but to society as well." *Id.* (quoting H.R. Rep. 93–1508 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7401, 7408); *see also United States v. Berberian,* 851 F.2d 236, 239 (9th Cir.1988) ("The parties cannot stipulate to a waiver of the protections of the Speedy Trial Act.").

■ The dissent misplaces reliance on the rationale of *New York v. Hill,* —— U.S. ——, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000), which held that defense counsel may waive the right to trial within the time period set forth in the Interstate Agreement on Detainers ("IAD"), 18 U.S.C.App. § 2. There the Court rejected respondent's argument that "the IAD benefits not only the defendant but society generally, and that the defendant may not waive society's rights." *Id.* at 665. Noting that the time limits in the IAD do not apply at all unless requested, the Court reasoned "it cannot be argued that society's interest in the prompt resolution of outstanding charges is so central to the IAD that it is part of the unalterable 'stat-

6. *United States v. Lewis,* 980 F.2d 555 (9th Cir.1992), is not to the contrary. In *Lewis,* the district judge excluded time because the government needed handwriting exemplars from the defendant, who had injured his hand and was unable to produce accurate exemplars. The district judge explained that the breakdown of good faith plea negotiations forced the government to quickly prepare for trial. *Id.* at 561 n. 9. In *Lewis* there were other independent and sufficient grounds to justify the continuance and the district judge considered the section 3161(h)(8)(B) factors and made specific findings. Therefore *Lewis* does not contradict the *Perez–Reveles* rule that plea negotiations do not justify exclusion of time. *Cf. id.* at 563 n. 13 ("the district court here cited his participation in plea negotiations for an entirely different purpose from that in *Perez–Reveles* ").

7. The dissent fails to offer a meaningful distinction between this case and that of *Perez–Reveles.* It would confine the *Perez–Reveles* rule to "trial" continuances as opposed to delays in "filing the indictment." Post at 5506.· But *Perez–Reveles* is not fairly so confined. There we held that "[n]egotiation of a

plea bargain is not one of the factors supporting exclusion provided in section 3161(h)(8)(B)." *Perez–Reveles,* 715 F.2d at 1352. Section 3161(h)(8)(B) applies with equal force to exclusions of time pre and post-indictment. *See* § 3161(h) ("The following periods of delay shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence"). Moreover, in her post-hoc findings, the district court here expressly relied upon section 3161(h)(8)(B) to justify the pre-indictment delay.

8. Because the Magistrate Judge did not articulate on the record any of the factors motivating his decision, even if we were to find that plea negotiations are properly considered, the outcome of this case would not be altered. *See Jordan,* 915 F.2d at 565 (finding a Speedy Trial Act violation in part because "the court made no findings to justify its August 28, 1987 order that set the trial date more than 70 days later"); *Perez–Reveles,* 715 F.2d at 1353 (finding a violation "because the district court's rulings did not include the explicit findings required by the Act").

utory policy,'" *id.* (citation omitted), and concluded that "the IAD 'contemplate[s] a degree of party control that is consonant with the background presumption of waivability,'" *id.* at 665–66 (quoting *United States v. Mezzanatto,* 513 U.S. 196, 206, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995)). The Court expressly distinguished the IAD's "party control" feature from the particular features of the Speedy Trial Act:

> This feature, among others, makes respondent's analogy to the Federal Speedy Trial Act of 1974, 18 U.S.C. § 3161 et seq., inapt. The time limits of the Speedy Trial Act begin to run automatically rather than upon request, §§ 3161(a), (b); dismissal may sometimes be without prejudice, S 3162(a)(1), (2), *United States .v. Taylor,* 487 U.S. 326, 332–[33, .108 S.Ct. 2413, 101 L.Ed.2d 297 (1988)] [citations] and waiver is expressly allowed in certain limited circumstances, 18 U.S.C. § 3162(a)(2). In any event, the question of waiver under the Speedy Trial Act is not before us today, and we express no view on the subject.

*Id.* at 665 n. 2. We also note that the circumstances of this case, in which the government made the plea offer literally on the eve of the preliminary hearing, which forced Ramirez–Cortez to request a continuance to consider the government's offer, not only call into question the voluntariness of any waiver but also demonstrate the importance of the Speedy Trial Act's feature of independent inquiry by the district judge. *Cf. Lloyd,* 125 F.3d at 1268 ("Congress designed the Speedy Trial Act in part to protect the public's interest in the speedy administration of justice, and it imposed the sanction of dismissal under section 3162 to compel courts and prosecutors to work in furtherance of that goal." (citing *United States v. Antonio,* 705 F.2d 1483, 1485 (9th Cir.1983))).[9]

### III.

Because excessive pre-indictment delay in this case violated the Speedy Trial Act, the charges against Ramirez–Cortez must be dismissed. *See* 18 U.S.C. § 3162(a)(1). "Whether the dismissal shall be with or without prejudice is committed to the trial judge to consider based upon three factors: the seriousness of the offense, the circumstances leading to dismissal, and the impact that reprosecution would have on the administration of the Act and on the administration of justice." *United States v. Pollock,* 726 F.2d 1456, 1463 (9th Cir. 1984) (citing 18 U.S.C. S 3162(a)(1)); *cf. United States v. Hall,* 181 F.3d 1057, 1063 (9th Cir.1999) (quoting *Lloyd,* 125 F.3d at 1271) ("our usual practice is to remand to allow the district court to decide in the first instance the type of dismissal that is appropriate"); *see also United States v. Antonio,* 705 F.2d 1483, 1486–87 (9th Cir.

---

**9.** The dissent cites *Lewis* and *United States v. Shetty,* 130 F.3d 1324 (9th Cir.1997), in support of the position that Ramirez–Cortez forfeited his right to raise the violation of the Speedy Trial Act. *See* Post at 5504. However, in both of these cases, unlike here, the district court made specific findings on the record. *See Shetty,* 130 F.3d at 1330 ("Each continuance at issue in Shetty's case was specifically supported by the district court's reference to facts, which were stipulated by the parties, and which buttressed each of its findings of excludable time under the Speedy Trial Act."); *Lewis,* 980 F.2d at 561 (rejecting Lewis's argument that the court failed to make specific findings, stating, "[t]his ruling clearly meets the Act's specificity requirement."). In addition, in *Lewis,* the government was unprepared for trial because the defendant failed to provide it with satisfactory handwriting exemplars in a timely manner. Unlike Ramirez–Cortez, Lewis's "own actions contribute[d] to the need for an 'ends of justice' continuance." *Lewis,* 980 F.2d at 562. Furthermore, the dissent cites *Shetty* for the proposition that if defendants stipulate to continuances, they may not object under the Speedy Trial Act. However, unlike Ramirez–Cortez, Shetty stipulated to the *factual basis* for the continuances. *See Shetty,* 130 F.3d at 1330. District courts may fulfill their Speedy Trial Act responsibilities by adopting stipulated factual findings which establish valid bases for Speedy Trial Act continuances. In this case, however, the court granted the request for a continuance without any inquiry into the factual basis for excluding time under the Speedy Trial Act.

1983). *But compare Clymer,* 25 F.3d at 831 (appellate court should in certain cases determine prejudice). "If, after weighing the factors set forth in the statute, the trial court concludes this pre-indictment delay required dismissal with prejudice, the judgment and sentence shall be set aside; if dismissal without prejudice was the proper remedy, the court shall reinstate the judgment and sentence." *Antonio,* 705 F.2d at 1487.

### IV.

Ramirez–Cortez raises three additional issues on appeal. First, he argues that the district court erroneously denied his Rule 29 motion for acquittal because the government provided insufficient evidence that he is an alien. Second, Ramirez–Cortez contends that the district court erroneously instructed the jury regarding the element of the absence of the Attorney General's consent. Finally, Ramirez–Cortez argues that the district court erred in failing to grant him a third point for acceptance of responsibility under section 3E1.1(b)(1) of the United States Sentencing Guidelines. We reject the first two arguments, but agree with Ramirez–Cortez's contention regarding his sentence.

■■■■■ Sufficient evidence supported the conviction. Although neither a deportation order, *see United States v. Sotelo,* 109 F.3d 1446, 1449 (9th Cir.1997) (citing *United States v. Ortiz–Lopez,* 24 F.3d 53, 55 (9th Cir.1994)), nor the defendant's own admissions, *see United States v. Hernandez,* 105 F.3d 1330, 1332 (9th Cir.1997), standing alone, will support the conclusion that a defendant is an alien, here the government offered Ramirez–Cortez's prior deportation order, admissions Ramirez–Cortez made in his underlying deportation proceeding, and the testimony of an INS agent that his review of Ramirez–Cortez's immigration records reflected that Ramirez–Cortez was an alien. Based on this evidence, a rational trier of fact could have found beyond a reasonable doubt that Ramirez–Cortez was an alien. *Cf. United States v. Sotelo,* 109 F.3d 1446, 1449 (9th Cir.1997) (finding sufficient evidence of al-

ienage where the government's evidence consisted of a prior deportation order, the defendant's admissions to an INS agent that he was a Mexican citizen, and his admissions during the deportation hearing that he was not a United States citizen); *United States v. Contreras,* 63 F.3d 852, 858 (9th Cir.1995) (holding that sufficient evidence supported the conviction when the government introduced a prior deportation order, the deportation hearing transcript, which indicated that the defendant admitted his Mexican citizenship under oath, and testimony of an INS agent that the defendant was a Mexican citizen). Furthermore, Ramirez–Cortez was not entitled to a voluntariness hearing under 18 U.S.C. § 3501, and the district court properly admitted the statements made in the prior deportation proceeding. *See United States v. Solano–Godines,* 120 F.3d 957, 962 (9th Cir.1997).

■■■■■ Ramirez–Cortez's challenge to the district court's jury instruction regarding the Attorney General's lack of consent to reentry is precluded by our decision in *United States v. Blanco–Gallegos,* 188 F.3d 1072 (9th Cir.1999). The district court instructed the jury that "as a matter of law that the Immigration and Naturalization Service, I.N.S., is the delegated authority of the Attorney General for purposes of seeking consent of the Attorney General to reenter the United States." In *Blanco–Gallegos* we explained that "[t]he Attorney General has specifically delegated her authority to adjudicate applications for permission to reapply for admission into the United States to the INS," *id.* at 1075 (citing 8 C.F.R. §§ 103.1(f)(3)(iii)(E), 103.1(g)(3)(iii)(B)), and concluded that "[b]ecause the INS is the Attorney General's agent for immigration matters and specifically for processing applications for permission to reapply for admission into the United States, the jury could reasonably infer from the lack of an application in the INS's A–File that no such application existed," *id.* Therefore, the jury instruc-

tion was neither misleading nor inadequate.

■ Finally, Ramirez–Cortez contends that the district court erred in failing to grant him a third point for acceptance of responsibility under section 3E1.1(b)(1) of the United States Sentencing Guidelines. Ramirez–Cortez admitted to all of the elements of the offense during his interview with the INS agent. This conduct amounted to timely and complete assistance to the authorities. *See Blanco-Gallegos,* 188 F.3d at 1077 ("Once the two-point reduction under § 3E1.1 has been awarded, the only question is timeliness and completeness"). Therefore, notwithstanding his putting the government to its proof at trial, Ramirez–Cortez was entitled to an additional one-level downward adjustment pursuant to section 3E1.1(b)(1). *See id.; United States v. Eyler,* 67 F.3d 1386, 1391 (9th Cir.1995). On remand, if the district court determines that the complaint should be dismissed without prejudice it shall resentence Ramirez–Cortez in accordance with this opinion.

REVERSED and REMANDED.

SILVERMAN, Circuit Judge, dissenting:

Talk about chutzpah. The defendant, represented by counsel, requested a continuance of the preliminary hearing. He was addressed by the judge and personally confirmed that he wanted a continuance. The judge granted the motion and excluded the time. Then, after having obtained the benefit of the very continuance that he himself requested, the defendant moved to dismiss the indictment on the ground that his own motion to continue should not have been granted. The only thing more bizarre than this is that he wins.

Contrary to what the majority says, this anomalous result is not compelled by either our precedents or the Speedy Trial Act itself. As we said in *United States v. Lewis,* 980 F.2d 555, 562–3 (9th Cir.1992):

> Where a defendant's own actions contribute to the need for an "ends of justice" continuance under the STA

[Speedy Trial Act] the defendant cannot complain that a continuance violates his or her speedy trial rights. See *United States v. Mentz,* 840 F.2d 315, 331 (6th Cir.1988) (where defendant's vacillation in changing to a guilty plea lulled the government into suspending its trial preparation, delay attributed to him not government); *United States v. Bolton,* 905 F.2d 319, 322 (10th Cir.1990), cert. denied, 498 U.S. 1029, 111 S.Ct. 683, 112 L.Ed.2d 674 (1991) (need for continuance due to defendant's last minute vacillations regarding representation and waiver of STA rights attributed to him because defendant cannot "string the court along by delaying in retaining counsel and then use the [STA] as a sword to dismiss a proper indictment, rather than as a shield to protect against unnecessary and unfair delays."); cf. *Hudson v. Moran,* 760 F.2d 1027, 1030 (9th Cir.), cert. denied, 474 U.S. 981, 106 S.Ct. 387, 88 L.Ed.2d 339 (1985) (under Nevada state law equivalent of STA, when defendant's dilatory tactics prevent trial from commencing within the statutory period state will not be charged with the responsibility for the delay).

Although Lewis's actions alone did not trigger the need for the "ends of justice" continuance, his whole-hearted and seeming good faith participation in plea negotiations, as well as his provision of the stilted and unnatural ... [handwriting] exemplars clearly played a major role in prompting the need for a continuance. Thus, the district court did not clearly err in concluding that the ends of justice would be served by a continuance to permit the government adequate time to obtain satisfactory exemplars and to prepare for a trial that otherwise would not be able to proceed without the exemplars. [Footnotes omitted.]

In *United States v. Shetty,* 130 F.3d 1324, 1330 (9th Cir.1997), the district court granted a series of trial continuances supported by written stipulations signed by the government's lawyer, defense counsel and the defendant himself. Ten days prior

to trial, the defense moved to dismiss the indictment for violation of the Speedy Trial Act, the same sort of crafty stratagem pulled here. We held:

> As clearly demonstrated by the record, however, the defense never objected to any of the continuances, even when the district court gave it direct opportunities to do so. Instead, Shetty personally stipulated to six of the eight continuances (and each of the three continuances upon which he focuses on appeal).
>
> \* \* \* \* \* \*
>
> In light of those stipulations, and in the absence of any objection by the defense, it is inappropriate for Shetty to seek reversal of his conviction under the Speedy Trial Act and dismissal of the indictment, with or without prejudice. *Cf. United States v. Palomba,* 31 F.3d 1456, 1462 (9th Cir.1994) (where defendant stipulates to the need for trial preparation, he cannot maintain that continuances give rise to a violation of the Speedy Trial Act.)

The majority is of the view that a defendant never can waive his rights under the Speedy Trial Act, no matter what. Apparently, a defendant can waive his right to trial, his right to counsel, his right to be charged by indictment, his right to be tried by a jury, his right to confront and cross-examine witnesses, his right to testify in his own behalf, his right to refuse to testify, his right to present a defense, his right to compel the attendance of witnesses, his right to appeal—but *not,* according to the majority, his right to have an indictment filed against him within 30 days of his arrest. The majority derives this conclusion from the non sequitur that because society has an interest in speedy justice, no waiver of any speedy trial deadline is ever possible, and therefore, dismissal for any "violation" is mandated. The Supreme Court recently debunked that view. *New York v. Hill,* —— U.S. ——, 120 S.Ct. 659, 145 L.Ed.2d 560 (2000).

In *Hill,* the Court considered the effect of a waiver of the speedy trial provisions of the Interstate Agreement on Detainers, a statutory scheme analogous to the Speedy Trial Act. For a unanimous Court, Justice Scalia wrote:

> [R]espondent argues that the IAD benefits not only the defendant but society generally, and that the defendant may not waive society's rights. It is true that a "right conferred on a private party, but affecting the public interest, may not be waived or released *if such a waiver or release contravenes the statutory policy."* · *Brooklyn Savings Bank v. O'Neil,* 324 U.S. 697, 704, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) (emphasis added). The conditional clause is essential, however: It is not true that any private right that also benefits society cannot be waived. In general, "[i]n an adversary system of criminal justice, the public interest in the administration of justice is protected by the participants in the litigation." *Gannett Co. v. DePasquale,* 443 U.S. 368, 383, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). We allow waiver of numerous constitutional protections for criminal defendants that also serve broader social interests.

*Id.* at 665. (Second emphasis in original.)

The majority's reliance on *United States v. Perez–Reveles,* 715 F.2d 1348 (9th Cir. 1983) is misplaced as well. In *Perez–Reveles,* we held that plea negotiation is not one of the factors supporting the exclusion of time upon the granting of a *trial* continuance. The exclusion of time in the present case, however, was for *filing of the indictment.*[1] Besides, as the district judge

---

1. In *Perez–Reveles,* the defendant at least registered his objection to the supposedly untimely trial *before* the trial began. In the instant case, the time for the filing of the indictment came and went without any objection whatsoever. The defendant never said boo about it until *after* the plea negotiations failed and until *after* the indictment was returned. If the defendant did not intend to waive his right to be indicted within thirty days of his arrest, he should have moved to dismiss the complaint sometime *after* day number thirty but *before* the indictment was

found, there was more to this continuance than just plea negotiations. Because these proceedings were in their infancy, defense counsel required time to investigate the case and to develop the trust of the defendant, whom she just met, before advising him whether to accept a take-it-or-leave-it plea bargain calling for two years in prison. This circumstance is in sharp contrast to a last minute motion to continue a trial so that the parties can engage in plea discussions that should have been pursued long before.

Finally, it is the height of irony that in the name of upholding society's right to a speedy trial, the majority not only sets aside the result of an errorless trial, but it gives the coup de grace to the Southern District of California's innovative fast-track policy, a delay *reduction* program designed to promote the early disposition of certain types of cases prior to indictment, a program previously praised by this court. *United States v. Estrada–Plata*, 57 F.3d 757 (9th Cir.1995).[2] As is often said, the Speedy Trial Act is a shield, not a sword. In this case, unfortunately, the majority allows it to be used to skewer both good court administration and a valid conviction. I respectfully dissent.

filed. As I see it, when a defendant has a meritorious motion to dismiss a complaint for failure to indict in time, but he doesn't see fit to assert it until *after* the indictment is filed, the motion is waived. This is because the filing of an indictment supersedes the complaint, *Jaben v. United States*, 381 U.S. 214, 85 S.Ct. 1365, 14 L.Ed.2d 345 (1965) and kicks off the running of a new 70–day time limit. 18 U.S.C. § 3161(c)(1).

2. In *Estrada–Plata*, we said:

In light of the overall crime problem in the Southern District of California, the Govern-

ment chooses to allow section 1326 defendants the opportunity to plea to a lesser offense, if done so at the earliest stage of the case. Like the district court, we find absolutely nothing wrong (and quite frankly, a great deal right) with such a practice. The policy benefits the government and the court system by relieving court congestion. But more importantly, the policy benefits 1326(b) defendants by offering them a substantial sentence reduction. These defendants have nothing to lose and much to gain from the fast-track policy.
*Estrada–Plata*, 57 F.3d at 761.