FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-50298 |
| *Plaintiff-Appellee,* | D.C. No. 3:20-cr-02277-LAB-1 |
| v. | |
| ARMANDO OROZCO-BARRON, AKA Armando Orozco-Baron, | OPINION |
| *Defendant-Appellant.* | |

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted December 8, 2022
Pasadena, California

Filed May 22, 2023

Before: Carlos T. Bea, Sandra S. Ikuta, and Morgan
Christen, Circuit Judges.

Opinion by Judge Ikuta;
Partial Concurrence and Partial Dissent by Judge Christen

# SUMMARY[*]

## Criminal Law

Affirming Armando Orozco-Barron's conviction for attempted illegal reentry after deportation, the panel held that the district court, in denying Orozco-Barron's motion to dismiss his information for violations of the Speedy Trial Act, did not clearly err in excluding periods of delay resulting from ends of justice continuances granted due to events caused by the global COVID-19 pandemic.

The focus of the parties' dispute was on whether the period from August 14, 2020 (the day after the information was filed) until December 1, 2020 (a total of 110 days) was excluded from computing the time within which the trial had to commence under the Speedy Trial Act.

The panel concluded that the district court complied with the applicable statutory requirements. First, the district court's finding that the ends of justice were best served by granting continuances during the period from August 14, 2020, until December 1, 2020, was timely because the district court put this finding on the record during the July 12, 2021, hearing on the defendant's motion to dismiss under 18 U.S.C. § 3162(a)(2). The continuances were also specifically limited in time to successive 30-day periods. Next, the district court made the requisite findings under § 3161(h)(7)(A), consistent with *United States v. Olsen*, 21 F.4th 1036 (9th Cir. 2022) (per curiam), by relying

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

on the Southern District of California chief judge orders in effect during the time period at issue.  In addition to relying on the chief judge orders, the district court made its own findings on the record.  The district court also considered the relevant statutory and non-statutory factors when deciding to grant a continuance.  The panel wrote that the district court's findings—both the district court's statements at the hearing and the chief judge orders incorporated by reference—are consistent with *Olsen*'s reasoning that a court could appropriately base its decision to grant continuances on the fact that "a global pandemic that has claimed more than half a million lives in this country, and nearly 60,000 in California alone, falls within such unique circumstances to permit a court to temporarily suspend jury trials in the interest of public health."  In light of this court's ruling in *Olsen*, and the continuation of the global pandemic, the panel concluded that neither the district court's factual findings nor its ultimate ends of justice determination were clearly erroneous.

Citing *United States v. Carrillo-Lopez*, No. 21-10233, __ F.4th __ (9th Cir. 2023), the panel rejected Orozco-Barron's argument that the district court erred by not dismissing his information on the ground that 8 U.S.C. § 1326 violates the Equal Protection Clause.

Judge Christen concurred in part and dissented in part.  She concurred in the majority's conclusion that § 1326 does not violate the Equal Protection Clause, but wrote that the majority errs by affirming the district court's denial of Orozco-Barron's motion to dismiss for violation of the Speedy Trial Act (STA).  She wrote that the majority relies on *Olsen*, a case that arose when a series of orders suspended all jury trials in the Central District of California due to the COVID-19 pandemic, but that, by contrast, most of Orozco-

Barron's pre-trial detention occurred after the Southern District of California had resumed conducting jury trials on a limited basis. As such, the STA and Supreme Court precedent interpreting it required the district court to make case-specific findings before excluding time on the STA clock, which the district court did not do.

## COUNSEL

Katherine M. Hurrelbrink (argued), Assistant Federal Public Defender, Federal Public Defenders' Office, San Diego, California, for Defendant-Appellant.

Mark R. Rehe (argued), Michael A. Deshong, and Vivian Sapthavee, Assistant United States Attorneys; Daniel E. Zipp, Assistant United States Attorney, Appellate Section Chief; Randy S. Grossman, United States Attorney; Office of the United States Attorney; San Diego, California; for Plaintiff-Appellee.

# OPINION

IKUTA, Circuit Judge:

Armando Orozco-Barron appeals his conviction for attempted illegal reentry after deportation in violation of 8 U.S.C. § 1326.  He contends that the district court erred in denying his motion to dismiss his information for violations of the Speedy Trial Act.  We conclude that the district court did not clearly err in excluding periods of delay resulting from ends of justice continuances granted due to events caused by the global COVID-19 pandemic, and therefore we affirm.

## I

The Speedy Trial Act, 18 U.S.C. § 3161, implements the Sixth Amendment's guarantee of a speedy and public trial to criminal defendants.  *See Furlow v. United States*, 644 F.2d 764, 769 (9th Cir. 1981) (per curiam).  Under the Speedy Trial Act, "the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment."  18 U.S.C. § 3161(c)(1).  This timeline may be extended if a court grants a motion to exclude certain periods of delay listed in 18 U.S.C. § 3161(h).  "If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by section 3161(h), the information or indictment shall be dismissed on motion of the defendant."  *Id.* § 3162(a)(2).

Among other excluded periods, § 3161(h)(7)(A) excludes "[a]ny period of delay resulting from a continuance granted by any judge . . . if the judge granted such continuance on the basis of his findings that the ends of

justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." A continuance granted on this basis is sometimes referred to as an "ends-of-justice continuance." *Zedner v. United States*, 547 U.S. 489, 500 (2006).

A district court must comply with certain requirements when granting an ends of justice continuance. First, any period of delay resulting from the continuance must be "specifically limited in time." *United States v. Lloyd*, 125 F.3d 1263, 1268 (9th Cir. 1997) (citation omitted). Second, the court must "set[] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice" outweigh the public's and defendant's interest in a speedy trial. 18 U.S.C. § 3161(h)(7)(A). Although "the Act is ambiguous on precisely when those findings must be se[t] forth, in the record of the case," the Supreme Court has ruled that the district court must put its ends of justice findings on the record "by the time a district court rules on a defendant's motion to dismiss under § 3162(a)(2)." *Zedner*, 547 U.S. at 506–07 (alteration in original). Third, the court "must evaluate, 'among others,' several enumerated factors" in deciding whether to grant an ends of justice continuance. *United States v. Olsen*, 21 F.4th 1036, 1041 (9th Cir.) (per curiam) (citing 18 U.S.C. § 3161(h)(7)(B)(i)–(iv)), *cert. denied*, 142 S. Ct. 2716 (2022).[1]   "[D]istrict courts have

---

[1] 18 U.S.C. § 3161(h)(7)(B) provides:

> (B) The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation

broad discretion to consider any factors based upon the specific facts of each case," *id.* at 1046, and a court is not required to address every factor listed in the statute "as long as its reasoning is sufficient to justify excluding the continuance from the Act's seventy-day limit." *United States v. McCarns*, 900 F.3d 1141, 1144–45 (9th Cir. 2018) (citations omitted). District courts may also need "to address relevant non-statutory considerations." *Olsen*, 21 F.4th at 1046.

---

of such proceeding impossible, or result in a miscarriage of justice.

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

(iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

"[I]f a judge fails to make the requisite findings regarding the need for an ends-of-justice continuance, the delay resulting from the continuance must be counted, and if as a result the trial does not begin on time, the indictment or information must be dismissed." *Zedner*, 547 U.S. at 508. Therefore, the "failure to make the prescribed findings" to justify a continuance cannot "be excused as harmless error" under "the Act's categorical terms." *Id.*

We have recently "provide[d] guidance on the application of the Speedy Trial Act's ends of justice provision, 18 U.S.C. § 3161(h)(7)(A), in the context of the challenges presented by the COVID-19 pandemic." *Olsen*, 21 F.4th at 1044. In *Olsen*, we considered delays caused by the Central District of California's suspension of jury trials due to the COVID-19 pandemic. *Id.* at 1041. On March 13, 2020, the Central District declared a judicial emergency under 18 U.S.C. § 3174,[2] which was subsequently approved by the Ninth Circuit's Judicial Council. *In re Approval of Jud. Emergency Declared in C.D. Cal.*, 955 F.3d 1140, 1141 (9th Cir. 2020) (order). The Central District then issued a series of emergency orders suspending criminal jury trials "with the stated purpose 'to protect public health' and 'to reduce the size of public gatherings and reduce unnecessary travel,' consistent with the recommendations of public health authorities." *Olsen*, 21 F.4th at 1041. After eight continuances of the defendant's trial date, the defendant asked to proceed with a jury trial. *Id.* at 1042. "The government argued that an ends of justice continuance was appropriate due to the COVID-19 pandemic, the Central

---

[2] 18 U.S.C. § 3174 provides procedures for a district court to apply to the judicial council of the circuit to suspend the time limits required for compliance with the Speedy Trial Act.

District's order suspending jury trials, and the absence of protocols to ensure the safety of jurors, witnesses, court staff, litigants, attorneys, defendants, and the public." *Id.*

The district court denied the government's motion. *Id.* The court focused on one factor set out in § 3161(h)(7)(B)(i), "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible." *Id.* at 1042–43. Interpreting this language narrowly, the court held that an ends of justice continuance could not be granted unless holding a trial would be literally impossible. *Id.* at 1043. Observing that "grand juries had convened in the federal courthouse" and that a state court across the street "had resumed jury trials with precautionary measures," the district court determined that it was "not a physical or logistical impossibility to conduct a jury trial." *Id.* Therefore, it denied the motion for a continuance. *Id.* at 1042. The court subsequently granted the defendant's motion to dismiss the indictment with prejudice for violations of the Speedy Trial Act. *Id.* at 1043–44.

*Olsen* reversed in an opinion setting forth important direction for reviewing an ends of justice continuance in an emergency situation such as the one before the district court.

First, *Olsen* rejected the district court's narrow reading of § 3161(h)(7)(b)(i) as precluding a court from granting ends of justice continuances if holding a trial is not literally impossible. *Id.* at 1044–45. *Olsen* held there was no such per se rule, and a court could grant such an ends of justice continuance even if a trial were physically or logistically possible in some manner. *Id.* In the same vein, *Olsen* rejected the argument that a court could not grant an ends of justice continuance merely because other courts were able to

conduct jury trials. *See id* at 1046–47 nn.9–10. *Olsen* noted that different courthouses may raise different risk factors, and that courts holding jury trials were not necessarily conducting such trials safely. *Id.*

Second, *Olsen* indicated that in evaluating a motion for an ends of justice continuance, a district court cannot limit itself to focusing only on the statutory impossibility factor in § 3161(h)(7)(B)(i), but must consider other relevant statutory and non-statutory factors. *Id.* at 1046–47. Specifically, *Olsen* held that the district court should have evaluated whether the failure to grant a continuance would be likely to "result in a miscarriage of justice." *Id.* at 1046 (citing § 3161(h)(7)(B)(i)). The court should also have considered other non-statutory factors relevant to the COVID-19 pandemic.[3] *Id.*

Next, *Olsen* held that "a global pandemic that has claimed more than half a million lives in this country, and

---

[3] In the context of the COVID-19 pandemic, *Olsen* found the following "non-exhaustive," non-statutory factors relevant:

> (1) whether a defendant is detained pending trial; (2) how long a defendant has been detained; (3) whether a defendant has invoked speedy trial rights since the case's inception; (4) whether a defendant, if detained, belongs to a population that is particularly susceptible to complications if infected with the virus; (5) the seriousness of the charges a defendant faces, and in particular whether the defendant is accused of violent crimes; (6) whether there is a reason to suspect recidivism if the charges against the defendant are dismissed; and (7) whether the district court has the ability to safely conduct a trial.

21 F.4th at 1046.

nearly 60,000 in California alone, falls within such unique circumstances to permit a court to temporarily suspend jury trials in the interest of public health." *Id.* at 1047. *Olsen* noted our Judicial Council's explanation that "Congress did not intend that a district court demonstrate its inability to comply with the [Speedy Trial Act] by dismissing criminal cases and releasing would-be convicted criminals into society." *Id.* (alteration in original) (citing *Judicial Emergency*, 955 F.3d at 1142–43).

*Olsen* also indicated that the Central District's emergency general orders were a sufficient basis "to pause jury trials and exclude time under the Speedy Trial Act." *Id.* at 1049. *Olsen* observed that "[t]he orders acknowledge the importance of the right to a speedy and public trial both to criminal defendants and the broader public, and conclude that, considering the continued public health and safety issues posed by COVID-19, proceeding with such trials would risk the health and safety of those involved, including prospective jurors, defendants, attorneys, and court personnel." *Id.*; *see also id.* at 1052 (Murguia, C.J., and Christen, J., concurring in denial of rehearing en banc) (describing *Olsen* as noting "that the Central District of California's emergency general orders clearly applied the Speedy Trial Act standard").

Given the national emergency caused by the COVID-19 pandemic, and the Central District's suspension of jury trials, *Olsen* had "no difficulty in concluding that the district court's failure to grant the government's motion and subsequent dismissal of [the defendant]'s indictment . . . resulted in a miscarriage of justice." *Id.* at 1046. Therefore, *Olsen* concluded that the government was entitled to an ends of justice continuance, and ordered the district court to grant one and set the case for a trial. *Id.* at

1049.  *Olsen* also reversed the district court's dismissal of the defendant's indictment.  *Id.*

Our conclusion in *Olsen* is consistent with the conclusions of two of our sister circuits.  *See United States v. Leveke*, 38 F.4th 662, 670 (8th Cir.), *cert. denied*, 143 S. Ct. 386 (2022) (holding that a district court may properly grant an ends of justice continuance to postpone all jury trials due to the COVID-19 pandemic, and may rely on administrative orders issued by the district); *United States v. Roush*, No. 21-3820, 2021 WL 6689969, at *1–2 (6th Cir. Dec. 7, 2021), *cert. denied*, 142 S. Ct. 1187 (2022) (holding that the district court did not abuse its discretion in granting an ends of justice continuance based on the district court's General Orders pertaining to the management of cases during the COVID-19 pandemic); *cf. United States v. Keith*, 61 F.4th 839, 851 (10th Cir. 2023) (holding that "[t]he district court acted within its discretion by excluding . . . 85 days from the [Speedy Trial Act] clock" and "support[ing] its ends-of-justice findings by identifying 'the current state of the COVID-19 pandemic in Oklahoma,'" citing the Western District of Oklahoma's court-wide General Orders).

## II

## A

We now turn to the facts of this case.  Armando Orozco-Barron is a citizen of Mexico who has repeatedly entered the United States illegally, and has been deported eight times. During the periods he was in the United States, he was convicted of multiple offenses, including four convictions for driving while intoxicated, three for assault or battery, including a domestic violence conviction, two for improper entry in violation of 8 U.S.C. § 1325, and one for illegal reentry in violation of 8 U.S.C. § 1326.

On July 17, 2020 (three months after his most recent deportation to Mexico), he was once again arrested for illegal reentry. When arrested, Orozco-Barron admitted he had no right to enter the United States, and was ordered detained. Orozco-Barron waived indictment. The government filed an information, charging Orozco-Barron with attempted reentry by a deported alien in violation of 8 U.S.C. § 1326, on August 13, 2020.[4]

As in *Olsen*, Orozco-Barron's trial took place against a backdrop of the global COVID-19 pandemic. Beginning on March 17, 2020, Chief Judge Burns of the Southern District of California (who also was the presiding judge of Orozco-Barron's district court case) declared a judicial emergency, *see* 28 U.S.C. § 3174(e), and issued an emergency order suspending Speedy Trial Act time limits in his district (Chief Judge Order 18).[5] In addition to declaring a judicial emergency, the Chief Judge ordered all jury trials in criminal cases to be continued until April 16, 2020. The Chief Judge based his order on the need "to protect public safety and

---

[4] On appeal, Orozco-Barron argues that the district court erred by not dismissing his information on the ground that § 1326 violates the Equal Protection Clause. After the appeal in this case, we held that Section 1326 does not violate the Equal Protection Clause. *See United States v. Carrillo-Lopez*, No. 21-10233, __ F.4th __ (9th Cir. 2023). Therefore, we reject this argument.

[5] Other district courts in California took the same approach. The Central District had filed a similar declaration of emergency a few days earlier, *see Olsen*, 21 F.4th at 1041 n.2. The Chief Judge of the Northern District issued an emergency order on March 16, 2020, *see United States v. Allen*, 34 F.4th 789, 793 (9th Cir. 2022). The Chief Judge of the Eastern District also issued an emergency order on March 17, 2020. *In re Approval of Jud. Emergency Declared in E.D. Cal.*, 956 F.3d 1175, 1177 (9th Cir. 2020) (order).

prevent the spread of COVID-19," as well as a range of additional factors, including that the "President of the United States of America, the Governor of the State of California, and the Mayor of the City of San Diego ha[d] declared states of emergency in response to" COVID-19, that the "Centers for Disease Control and Prevention and other public health authorities ha[d] advised that public gatherings be limited to no more than ten people," that the "United States Attorney for the Southern District" advised "that a quorum of grand jurors [would] not be available," and that the San Diego federal jail had "restricted access by defense counsel to their incarcerated clients." Further, the Chief Judge found that the "effect of these public health recommendations and the concerns and restrictions that they have generated ha[d] greatly jeopardized the Court's ability to obtain an adequate spectrum of trial and grand jurors, and impair[ed] the availability of counsel, witnesses, parties, the public, . . . and Court staff to be present in the courtroom." Based on these factors, the Chief Judge found that "the period of suspension of criminal trials and other criminal proceedings implemented by this Order" was to be "excluded under the Speedy Trial Act" per 18 U.S.C. § 3161(h)(7)(A), because "these continuances serve the ends of justice and outweigh the interests of the public, of the government, and of criminal defendants in a speedier trial."**[6]**

---

[6] As in *Olsen*, the Ninth Circuit's Judicial Council subsequently approved the Chief Judge's request and extended the judicial emergency for an additional period of up to one year. *See In re Approval of Jud. Emergency Declared in S.D. Cal.*, 955 F.3d 1135, 1136 (9th Cir. 2020) (order). Although a declaration under § 3174 extends the time limits from indictment to trial under the Speedy Trial Act, "[t]he time limits for the trial of cases of detained persons who are being detained solely because they are awaiting trial" are not affected by that section. 18

A month later, on April 15, 2020, the Chief Judge issued a second order extending the continuance for an additional period of 30 days.  The order stated that the "circumstances giving rise to the judicial emergency ha[d] not materially changed or abated" in the last thirty days, and the "public health emergency continue[d] in the nation, the State of California, and the City of San Diego" due to COVID-19. Therefore, based on the same "factors outlined in [Chief Judge Order] 18" regarding the need "to protect the public safety and prevent the spread" of COVID-19, the Chief Judge extended the emergency orders set forth in Chief Judge Order 18 and found that "this extension serve[d] the ends of justice under 18 U.S.C. § 3161(h)(7)(A)."

As the COVID-19 pandemic worsened over the following months, the Chief Judge continued to issue substantially similar orders on a monthly basis through the end of the year.[7]  Each order renewed the suspension of criminal jury trials and trial-specific deadlines in the Southern District for only 30 days, and made the same findings.  Four such chief judge orders were issued during

_____

U.S.C. § 3174(b).  Therefore, the emergency extension of Speedy Trial Act time limits under § 3174 does not affect Orozco-Barron; rather, the ordinary Speedy Trial Act time limits apply, as the government conceded in its response to Orozco-Barron's motion to dismiss the information under the Speedy Trial Act.  On appeal, the government does not argue otherwise.

[7] *See* Chief Judge Order 27 (filed May 15, 2020); Chief Judge Order 30 (filed June 11, 2020); Chief Judge Order 33 (filed July 13, 2020); Chief Judge Order 34 (filed August 14, 2020); Chief Judge Order  40 (filed September 14, 2020); Chief Judge Order 47 (filed October 14, 2020); Chief Judge Order 50 (filed November 16, 2020).  The chief judge orders are accessible at https://www.casd.uscourts.gov/rules/general-orders.aspx.

the period from August 14, 2020 to December 1, 2020, and each found that a 30-day continuance of criminal jury trials and trial-specific deadlines "serves the ends of justice under 18 U.S.C. § 3161(h)(7)(A)."[8]

On August 24, 2020, the Chief Judge issued a "District Trial Reopening Plan" (Chief Judge Order 36). This order provided a protocol for resuming civil and criminal jury trials to the extent possible, starting on August 31, 2020. The protocol noted the severe logistical difficulties in conducting trials "while maintaining the integrity of our health and safety protocol." In order to conduct trials safely, "[o]nly one trial [would] be set to start per floor per week" because there was "only one large enough room to assemble" jurors, there were "limits on the elevator capacity," and people needed to "maintain appropriate social distancing." Since availability and resources had to be divided among the judges in the district, a "rotation plan" was established. The Southern District successfully conducted a total of 14 trials (civil and criminal) under this protocol until December 2, 2020.

On December 2, 2020, the district court convened a status hearing in Orozco-Barron's case. Recognizing that "it [has] been tough on [Orozco-Barron] in custody," the court explained that due to the pandemic-related restrictions in the Southern District, such as the inability to summon potential jurors and the limited trial space, the court was still unable to set a trial date.

---

[8] The orders applicable during the 110 day period at issue in this case were Chief Judge Order 34 (filed August 14, 2020); Chief Judge Order 40 (filed September 14, 2020); Chief Judge Order 47 (filed October 14, 2020); Chief Judge Order 50 (filed November 16, 2020).

On December 3, 2020, California experienced "an unprecedented surge in the level of community spread of COVID-19." Based on state and local orders in response to this surge, the Chief Judge reinstated a moratorium on conducting in-person court proceedings.

While his case was pending, Orozco-Barron made several filings in district court. He filed a motion to suppress post-arrest statements, which was denied in a hearing on May 19, 2021. He also filed an appeal from the detention order issued by the magistrate judge, which was denied in a hearing on February 3, 2021. Finally, he filed a motion to dismiss the information on the ground that § 1326 violated the Equal Protection Clause and that the information violated the Fifth and Sixth Amendments. On April 7, 2021, the court denied his motion to dismiss. At that hearing, the court set a trial date for July 13, 2021, having found an available slot in the Southern District's rotation plan.

On June 23, 2021, Orozco-Barron protested the delay in setting a trial date for the first time, by filing a motion to dismiss for violation of the Speedy Trial Act. He claimed that the seventy-day time frame for trial had expired on October 23, 2020. On July 12, 2021, the district court denied the motion. The court stated it was relying "on the pendency of chief judge orders," which suspended jury trial proceedings for 30-day periods in light of the pandemic emergency.[9] The court explained that in June 2021, when Orozco-Barron filed his motion, the Southern District was "still under a chief judge order that limited the number of

---

[9] The district judge noted he was "fully aware of what the chief judge orders were" because he "issued some of them as chief." Among other orders, the district judge had issued chief judge orders 34, 40, 47, and 50, which were in effect during the disputed time period here.

jury trials to three per week, only one of which would be in a custody case." Because "[j]udges had to compete for slots," the court was unable to schedule Orozco-Barron's trial any time before July 13, 2021. The court explained that "the pandemic concerns were still in effect all the way through the expiration of that chief judge order," so "[a]ll of that time was excluded under the order."

Orozco-Barron's trial was held on July 13, 2021, and he was convicted by a jury of attempted illegal reentry.

B

On appeal, Orozco-Barron argues that the district court erred in denying his motion to dismiss for violation of the Speedy Trial Act. The focus of the parties' dispute is on whether the period from August 14, 2020 (the day after the information was filed) until December 1, 2020 (a total of 110 days) is excluded from computing the time within which the trial had to commence under the Speedy Trial Act.[10]

---

[10] The time from the filing of Orozco-Barron's information, August 13, 2020, to the date of trial, July 13, 2021, spanned 334 days. Orozco-Barron agrees that the period from December 2, 2020 to May 19, 2021 (a total of 168 days) and the period from June 21, 2021 until trial on July 13, 2021 (a total of 22 days) were validly excluded from the Speedy Trial Act clock. *See* 18 U.S.C. § 3161(h)(1)(D). Although the government initially argued that the time period between May 20, 2021 to June 21, 2021 (a total of 32 days) was excludable from the Speedy Trial Act clock, it now concedes that the time was not excludable. Therefore, we do not address Orozco-Barron's arguments that this period of delay is not excludable. If the period from August 14, 2020 to December 1, 2020 (the period which the parties dispute on appeal) is excludable, then only 32 days of the 70-day Speedy Trial Act time clock elapsed, and the district court did not err because there was no Speedy Trial Act violation. *See* 18 U.S.C. § 3161(c)(1). If that time period is not excludable, then 142 days elapsed, and Orozco-Barron's "information must be dismissed"

We have jurisdiction under 28 U.S.C. § 1291. We review the district court's interpretation of the Speedy Trial Act de novo, while we review its evaluation of the statutory and non-statutory factors as well as its ultimate ends of justice determination for clear error. *Olsen*, 21 F.4th at 1040.

### III

We now turn to the question whether the district court here improperly granted a continuance based on the ends of justice exception.

### A

We conclude that the district court complied with the applicable statutory requirements. First, the district court's finding that the ends of justice were best served by granting continuances during the period from August 14, 2020 until December 1, 2020 was timely because the district court put this finding on the record during the July 12, 2021 hearing on the defendant's motion to dismiss under § 3162(a)(2).[11] *See Zedner*, 547 U.S. at 506–07 & n.7.

The continuances were also specifically limited in time. *See Lloyd*, 125 F.3d at 1268. In granting the continuances, the district court "relie[d] on the pendency of [the] chief judge orders." Each of the orders applicable during this 110-

---

because his trial did not commence within 70 days. *Zedner*, 547 U.S. at 508.

[11] We reject Orozco-Barron's assertion that the district court erred by not explaining its reasons for a continuance at the time the court granted the continuance during the period from August 14, 2020 to December 1, 2020. The court need not put its reasons on the record until the "defendant moves to dismiss the indictment for failure to comply with the Speedy Trial Act." *McCarns*, 900 F.3d at 1145 n.6; *see also Zedner*, 547 U.S. at 506–07.

day period (chief judge orders 34, 40, 47, and 50) incorporated Chief Judge Order 18, which granted only a 30-day continuance.  Each of the subsequent monthly orders included the finding that "[m]any of the circumstances giving rise to the judicial emergency" in the district due to COVID-19 had "not materially changed" or "abated" in the preceding 30 days, so they granted an additional 30-day continuance.  Accordingly, the district court's continuances, based on the chief judge orders, were limited in time to successive 30-day periods.[12]  *See Lloyd*, 125 F.3d at 1268.

Next, the district court made the requisite findings under § 3161(h)(7)(A), consistent with *Olsen*, by relying on the chief judge orders in effect during the time period at issue. Like the general orders in *Olsen*, the chief judge orders explained why it was necessary, in light of the global COVID-19 pandemic, to suspend jury trials for 30 days "to protect the public safety and prevent the spread" of COVID-19.  Each order expressly found that "this extension serve[d] the ends of justice under 18 U.S.C. § 3161(h)(7)(A)."

In addition to relying on the chief judge orders, the district court also made its own findings on the record.  The court explained that even with mitigating measures, such as "people . . . stay[ing] six feet away from each other" and "wear[ing] masks," because of the emergency situation due to COVID-19, the operations of the court were severely limited because it was "impossible to select a jury in the

---

[12] The dissent errs in stating that our "reasoning would allow indefinite suspensions of criminal jury trials based solely on blanket general orders."  Dissent at 41.  Rather, each of the orders was limited in time to a 30-day continuance, based on the finding that "[m]any of the circumstances" due to COVID-19 had "not materially changed" or "abated" in the preceding 30 days.

courtrooms," and the need to protect public health and safety limited each judge's ability to conduct a trial. During the period of delay at issue, the court found that the Southern District was "under a chief judge order that limited the number of jury trials," and judges "had to take turns" to use the available courtrooms, and "had to compete for slots," using "a lottery form for the" 15 to 17 judges "who [were] trying cases," so the court could not schedule a case "with any degree of predictability." The Southern District succeeded in holding only 14 trials during the period from August 14, 2020 until December 1, 2020. Given the chief judge orders and the limitations on scheduling trial, the court concluded "it was impossible, a fact that the Ninth Circuit recognized in [*Olsen*], for the Court to convene [Orozco-Barron's] jury trial any time before" July 13, 2021 due to the COVID-19 pandemic. Based on these pandemic-based restrictions, the district court held that it could not convene Orozco-Barron's jury trial before July 13, 2021.

The district court also considered the relevant statutory and non-statutory factors when deciding to grant a continuance. In his statements at the hearing, the district court focused on the factor set forth in § 3161(h)(7)(B)(i), whether the failure to grant a continuance "would be likely to make continuation of such proceeding impossible, or result in a miscarriage of justice." In stating that *Olsen* recognized the impossibility of scheduling a trial during the pandemic, the court showed its understanding that "impossible" does not mean "literal impossibility," 21 F.4th at 1044–45, but rather that it faced the same barriers as were present in *Olsen*. The court also considered the most germane of the non-statutory factors relevant in a pandemic emergency, "whether the district court has the ability to safely conduct a trial." *Id.* at 1046.

The court's findings—both the district court's statements at the hearing and the chief judge orders incorporated by reference—are consistent with *Olsen*'s reasoning that a court could appropriately base its decision to grant continuances on the fact that "a global pandemic that has claimed more than half a million lives in this country, and nearly 60,000 in California alone, falls within such unique circumstances to permit a court to temporarily suspend jury trials in the interest of public health." *Id.* at 1047.

In light of our ruling in *Olsen*, and the continuation of the global pandemic, we conclude that neither the district court's factual findings nor its ultimate ends of justice determination were clearly erroneous. *See United States v. Christie*, 825 F.3d 1048, 1058 (9th Cir. 2016) ("To be clearly erroneous, a finding must be more than possibly or even probably wrong; the error must be pellucid to any objective observer." (citation and quotation marks omitted)). The district court based its findings on specific and well-recognized emergency limitations imposed due to health concerns that we recognized in *Olsen*, and that were present at the time it ordered the delays. Failing to grant a continuance would result in dismissing a criminal case and releasing a defendant charged with a recidivist offense, which is a miscarriage of justice recognized in *Olsen*. *See* 21 F.4th at 1046. Nor does the ability of the Southern District to conduct a minimal number of trials make the district court's finding that it could not schedule a trial in Orozco-Barron's case, due to the effects of the pandemic, clearly erroneous. *Christie*, 825 F.3d at 1058. In *Olsen*, "grand juries had convened in the federal courthouse" and the state court across the street was holding jury trials, and

yet we held that the district court erred in not granting a continuance. 21 F.4th at 1043.**[13]**

The dissent argues that the district court failed to consider the relevant factors because its ruling relied on the chief judge orders and did "not reflect consideration of Orozco-Barron's detained status during the pre-trial period," Dissent at 41–42 (citing *United States v. Torres*, 995 F.3d 695, 704 (9th Cir. 2021)). We disagree. A district court may incorporate the reasoning in general orders when an emergency or disaster has effects that are generally applicable, *see infra* at 27–28. Nor does *Torres* require the district court to make a finding on the record regarding the defendant's detained status. Rather, in *Torres*, we deemed that the district court had adequately considered the defendant's pretrial detention status because it "was well aware of Torres'[s] detention status, having previously denied Torres's request for release," and because there was "no indication that the district court failed to consider Torres's interest in being free from prolonged pretrial detention when it considered whether the ends of justice justified a continuance." *See* 995 F.3d at 707 n.10. Here, the district court likewise was well aware of Orozco-Barron's detention status, because it had previously denied Orozco-Barron's request for release after holding a hearing,

---

[13] The dissent therefore errs in faulting the district court's decision on the ground that "the Southern District of California had resumed conducting jury trials on a limited basis." Dissent at 30, 33, 41, 44. The district court explained why the resumption of jury trials did not change its conclusion that it remained impossible to convene a jury trial in Orozco-Barron's case before July 13, 2021, and *Olsen* itself recognized that the mere fact that a district court could physically hold a trial (and that other courts were doing so) would not prevent a court from granting an ends of justice continuance. 21 F.4th at 1045.

and subsequently recognized that it had been "tough on [Orozco-Barron] in custody." Thus, there is no indication that the district court failed to consider Orozco-Barron's interest in being free from prolonged detention.

## B

Orozco-Barron raises several arguments against this conclusion. First, he argues that the district court could not properly rely on the "pendency of chief judge orders" because the orders failed to address all the relevant, non-statutory factors set forth in *Olsen*. At most, Orozco-Barron argues, the orders relied on *Olsen*'s seventh factor (whether the court had the ability to safely conduct trial).

We disagree. It is not necessary for a court to address each of the statutory or non-statutory factors on the record before granting a continuance. The "Speedy Trial Act only requires a district court to state 'its *reasons* for finding that the ends of justice served by granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.'" *McCarns*, 900 F.3d at 1144 (alteration in original) (citing 18 U.S.C. § 3161(h)(7)(A)). But "[a] district court does not need to recite specific statutory language to satisfy § 3161(h)(7)(A) as long as its *reasoning* is sufficient to justify excluding the continuance from the Act's seventy-day limit." *Id.* at 1144–45 (emphasis added). For the same reason, it is not necessary for the district court to address each of the non-statutory factors identified in *Olsen* on the record so long as the district court provides adequate reasoning for granting the continuance.

*Olsen* confirms this conclusion. In *Olsen*, we held that the district court erred by failing to consider the "miscarriage of justice" factor. 21 F.4th at 1046. We did not suggest it erred by failing to mention each of the other statutory

factors. Although we listed seven additional "non-exhaustive" factors that we found relevant in the context of the COVID-19 pandemic, we did not hold that the district court erred by failing to address each non-statutory factor on the record. *Id.* Rather, we held that the district court has "broad discretion to consider *any* factors" bearing on the ends of justice determination, and we faulted the district court for failing to consider *any* relevant non-statutory considerations. *Id.* (emphasis added). Moreover, *Olsen* indicated that the findings in the chief judge orders (which are substantially similar to the orders in this case) were adequate "to pause jury trials and exclude time under the Speedy Trial Act," *id.* at 1049, even though they did not address the non-statutory factors listed in that opinion.**14**

Orozco-Barron argues that *Olsen* did consider all of the non-statutory factors before ordering the district court to issue an ends of justice continuance. *See id.* at 1056–57 (Murguia, C.J., and Christen, J., concurring in denial of

---

[14] The dissent argues that our reliance on *Olsen* for the conclusion that a district court may properly rely on a generally applicable circumstance to grant an ends of justice continuance is erroneous, because *Olsen* is distinguishable from our case. According to the dissent, "the question presented in *Olsen*" was whether the district court erred in its statutory interpretation of the Speedy Trial Act, and *Olsen* did not address "the general orders that suspended jury trials after the pandemic broke out." Dissent at 33. This is incorrect. If the only question in *Olsen* was one of statutory interpretation, then—after correcting the district court's misinterpretation of the word "impossible"—*Olsen* would have remanded the case to the district court to make an ends of justice determination under the correct reading of the statute. 21 F.4th at 1045. But instead, *Olsen* recounted the reasoning of the Central District's emergency orders, and then ordered the district court to grant "an appropriate ends of justice continuance, and set [the] case for trial." 21 F.4th at 1049.

rehearing en banc). Therefore, Orozco-Barron reasons, the district court here should have done the same. But *Olsen* neither expressly analyzed each factor nor stated that the district court was required to do so. To the contrary, the non-precedential concurrence in *Olsen*, on which Orozco-Barron relies, indicated that *Olsen* had implicitly addressed the non-statutory factors on appeal in the first instance. *Id.* And despite the lack of any express analysis of the non-statutory factors, *Olsen* "reinstate[d] [the defendant's] indictment" and "grant[ed] an appropriate ends of justice continuance." *Id.* at 1049 (majority opinion). Therefore, the failure of the district court to expressly address the "suggested" factors *Olsen* found "relevant" was not an error that violated the Speedy Trial Act.

Second, Orozco-Barron and the dissent contend that the district court erred by failing to make any individualized, case-specific findings. In making this argument, Orozco-Barron and the dissent rely on *United States v. Ramirez-Cortez*, Dissent at 31–32, 39–40, 44, where a defendant participating in the Southern District's fast-track program (which "was instituted to expedite resolution of the large number of illegal re-entry cases" in that district) had requested several continuances of the 30-day pre-indictment time period in order to consider a plea agreement offered by the government. 213 F.3d 1149, 1151 (9th Cir. 2000). The fast-track program's expedited schedule frequently "necessitate[d] continuances beyond the thirty-day pre-indictment period required by the Speedy Trial Act," and so a magistrate judge might grant continuances for multiple defendants simultaneously. *Id.* at 1152, 1154 & n.5. The magistrate judge granted two such continuances for the defendant by checking a box on a pre-printed form, which indicated that the time would be excluded pursuant to an

ends of justice exception. *Id.* at 1154. We held that the continuances violated the Speedy Trial Act because the magistrate judge granted blanket continuances to multiple defendants, and did not make any inquiry into the need for a continuance nor consider any of the ends of justice factors in the defendant's case. *Id.* at 1154–57. Orozco-Barron and the dissent argue that the chief judge orders here likewise grant "blanket continuances" and "displace the proper 'particularized inquiry as to the actual need and reasons for a continuance.'"

This argument fails. In *Ramirez-Cortez*, the defendant's need for a continuance was based on a reason specific to his particular situation, that he needed more time to respond to the government's proposed plea agreement. *Id.* at 1149. But that is not the situation here, where the period of delay was caused by an emergency or disaster that has the same widespread effects on courts and parties alike. In such unusual cases, a district court may properly rely on a generally applicable circumstance to grant an ends of justice continuance, and need not make individualized determinations. *See Olsen,* 21 F.4th at 1049; *see also United States v. Paschall*, 988 F.2d 972 (9th Cir. 1993)*.* In *Paschall*, for instance, a major snowstorm in Portland prevented the grand jury from forming a quorum for eight days. 988 F.2d at 973–74. In light of this event, the Chief Judge issued an order granting an ends of justice continuance for eight days of the 30-day pre-indictment period due to the "extreme adverse weather conditions" and their effect on forming a grand jury. *Id.* at 974. A district court later relied on the Chief Judge's order to deny a defendant's motion to dismiss because his indictment was not issued within the 30 days. *Id.* We rejected the defendant's argument that the chief judge and district court failed to make sufficiently

"specific findings," and held that the district court complied with the requirements for granting a continuance under the ends of justice exception by adopting the chief judge's order. *Id.* at 975.**[15]**  As in *Paschall*, the need for a continuance here was not based on any reason specific to Orozco-Barron, but rather due to a global pandemic that required suspending or sharply limiting trials in the Southern District generally.  In such circumstances, the reasons for granting the ends of justice continuance need not be particularized to an individual defendant, they need only be appropriate for the situation.  *See McCarns*, 900 F.3d at 1144–45.

Last, Orozco-Barron argues that the chief judge orders could not have supplied the necessary weighing of the ends of justice factors because the chief judge orders during the disputed period (chief judge orders 34, 40, 47, and 50) each stated that "the ends of justice under 8 U.S.C. § 3161(h)(7)(A)" supported *an extension of the previous chief judge order*, instead of stating that "the ends of justice under 8 U.S.C. § 3161(h)(7)(A)" supported *a continuance of pending trials dates*.  This argument is meritless.  The Speedy Trial Act "does not require such 'magic words.'" *United States v. White*, 920 F.3d 1109, 1117 (6th Cir. 2019) (citing *United States v. Breen*, 243 F.3d 591, 597 (2d Cir. 2001)); *see also McCarns*, 900 F.3d at 1144–45 (holding that ends of justice rulings need not "recite specific statutory language to satisfy § 3161(h)(7)(A)").  Rather, it requires

---

[15] Nothing in *Paschall* suggests that this court granted a continuance under the ends of justice exception strictly because the continuance "concerned only [a] brief and finite delay[] of proceedings," contrary to the dissent.  Dissent at 41.  Additionally, due to the "unprecedented challenges" brought by COVID-19, *Olsen*, 21 F.4th at 1040, it was impossible for the district court to predict when the pandemic would end, so 30-day continuances were reasonably brief under the circumstances.

only that the district court make findings that the ends of justice are served by a period of delay, and the district court did so here.

C

We conclude that the district court did not err in granting a continuance based on the ends of justice exception because, as we have previously determined, a global pandemic falls within the unique circumstances that permits a court to temporarily suspend a jury trial in the interest of public health and safety.[16]

**AFFIRMED.**

---

[16] In reaching this conclusion, we do not comment on the extent of a defendant's right to a speedy trial under the Sixth Amendment. The only speedy trial claim presented in this appeal was brought as a statutory claim under the Speedy Trial Act.

CHRISTEN, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's conclusion that 8 U.S.C. § 1326 does not violate the Equal Protection Clause, Maj. Op. at 13 n.4, but the majority errs by affirming the district court's denial of Armando Orozco-Barron's motion to dismiss for violation of the Speedy Trial Act (STA). The majority relies on *United States v. Olsen*, 21 F.4th 1036 (9th Cir. 2022), a case that arose when a series of orders suspended all jury trials in the Central District of California due to the COVID-19 pandemic. By contrast, most of Orozco-Barron's pre-trial detention occurred after the Southern District of California had resumed conducting jury trials on a limited basis. As such, the STA and Supreme Court precedent interpreting it required the district court to make case-specific findings before excluding time on the STA clock. Because the district court did not do so, I respectfully dissent.

I

"[T]he right to a speedy and public jury trial provided by the Sixth Amendment is among the most important protections guaranteed by our Constitution, and it is not one that may be cast aside in times of uncertainty." *Olsen*, 21 F.4th at 1049 (citing *Furlow v. United States*, 644 F.2d 764, 769 (9th Cir. 1981) (per curiam)); *see also Furlow*, 644 F.2d at 769 ("Except for the right of a fair trial before an impartial jury no mandate of our jurisprudence is more important.").

The STA requires that a criminal trial begin within seventy days from the date on which the indictment was filed or the date on which the defendant makes an initial appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1).

The Act provides flexibility by including a list of reasons that delays may be excluded from the seventy-day period. *Zedner v. United States*, 547 U.S. 489, 497 (2006). In particular, the ends-of-justice provision "gives the district court discretion—within limits and subject to specific procedures—to accommodate limited delays for case-specific needs." *Id.* at 499. Granting an ends-of-justice continuance requires a finding that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). District courts have broad discretion to exclude time under the ends-of-justice provision, and the severity of the pandemic's impact on trial court operations cannot be doubted. But the Supreme Court has emphasized the importance of the constitutionally guaranteed right to a speedy trial and has cautioned that the "strategy of [the ends-of-justice provision] is to counteract substantive openendedness with procedural strictness." *Zedner*, 547 U.S. at 509.

To exclude time under the ends-of-justice exception, the district court must "set forth, in the record of the case, either orally or in writing, its reasons" for doing so. 28 U.S.C. § 3161(h)(7)(A). The STA provides four "factors, among others, which a judge shall consider" when making an ends-of-justice determination, including "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice." *Id.* § 3161(h)(7)(B). The court must also consider relevant non-statutory factors, *see United States v. Lloyd*, 125 F.3d 1263, 1269–71 (9th Cir. 1997), and the Supreme Court has unambiguously cautioned that this inquiry entails individualized, case-specific findings, *see Zedner*, 547 U.S. at 499; *see also United States*

*v. Ramirez-Cortez*, 213 F.3d 1149, 1154 (9th Cir. 2000) (requiring a "particularized inquiry as to the actual need and reasons for a continuance"); *United States v. Jordan*, 915 F.2d 563, 565 (9th Cir. 1990) ("We have insisted that any continuance granted under [the ends-of-justice provision] must be based on 'specific factual circumstances.'" (quoting *United States v. Martin*, 742 F.2d 512, 514 (9th Cir. 1984))).[1]

Orozco-Barron did not receive a trial until eleventh months after he was charged with a single count of a nonviolent offense—illegal reentry—and he was jailed the entire time he awaited trial.  In concluding that this delay did not violate the STA, the district court relied on a series of Chief Judge Orders (CJOs) that suspended all criminal trials in the Southern District of California due to the COVID-19 pandemic.  For 93 of the 110 days of pre-trial detention at issue in Orozco-Barron's case, the Southern District was conducting jury trials according to its District Trial Reopening Plan.[2]

---

[1] *See also United States v. Torres*, 995 F.3d 695, 703 (9th Cir. 2021) ("[T]he plain language of the § 3161(h)(7) ends-of-justice analysis necessarily includes consideration of a defendant's detained status."); *Lloyd*, 125 F.3d at 1269 (reversing an exclusion of time when the district court should have considered whether the parties "actually want[ed] and need[ed] a continuance, how long a delay [was] actually required, what adjustments [could have been made] with respect to the trial calendars," and other factors).

[2] On August 24, 2020, the Southern District adopted a "District Trial Reopening Plan" providing that jury trials should resume on August 31, 2020.  The first criminal jury trial went forward on September 1, 2020. *See United States v. Medina-Suarez*, Case No. 19-CR-03192-AJB (S.D. Cal. Sept. 1, 2020), ECF No. 62.

The majority affirms the denial of Orozco-Barron's motion to dismiss for violation of the STA by overlooking that trials had resumed in the Southern District during most of the time he was in jail awaiting trial. The majority also misreads *Olsen* and disregards that the district court made no case-specific findings concerning the circumstances of Orozco-Barron's charged offense and detention. Its reasoning runs contrary to 18 U.S.C. § 3161(h)(7).

My colleagues offer various theories to affirm the district court's order denying Orozco-Barron's motion to dismiss, but none of them withstand scrutiny. First, the majority relies on *Olsen* to conclude that "a district court may properly rely on a generally applicable circumstance [here, the pandemic] to grant an ends of justice continuance, and need not make individualized determinations." *See* Maj. Op. at 27. At this first step, the majority errs in two ways: (1) it overlooks that the question presented in *Olsen* was the district court's statutory interpretation of the STA, not the interpretation of the general orders that suspended jury trials after the pandemic broke out; and (2) it skips over the facts that Orozco-Barron was detained pre-trial and nearly all of the excluded time at issue in this case occurred after jury trials had resumed. Next, the majority asserts that the district court *did* "consider[] the relevant statutory and non-statutory factors when deciding to grant a continuance," Maj. Op. at 21, but this assertion is contrary to the record. Finally, the majority suggests that *Olsen* allows case-specific factors to be considered in the first instance on appeal. Maj. Op. at 26. This theory fails because Supreme Court precedent does not permit harmless-error review of ends-of-justice exclusions. *See Zedner*, 547 U.S. at 508–09.

The suspension of criminal trials during the pandemic was an extraordinary measure and we have scant case law

addressing the application of the STA to protracted emergency closures or the reopening of courts after emergency closures.[3]  In my view, the STA and controlling precedent required case-specific, on-the-record findings in order to invoke the ends-of-justice exception and stop the speedy trial clock once trials resumed.  Unfortunately, the district court's brief discussion did not include such findings or the balancing the STA requires.

II

Orozco-Barron was arrested for illegal reentry, 8 U.S.C. § 1326, on July 17, 2020.  He was charged on August 13, 2020 and was ultimately convicted in a one-day trial held nearly a year later, on July 13, 2021.  Orozco-Barron was detained during the 361 days that passed between his arrest and trial.  At issue on appeal is whether the district court properly excluded the 110-day period from August 14, 2020 through December 1, 2020.

The Chief Judge of the Southern District of California issued CJO 18 when the COVID-19 pandemic began in March 2020.  That order temporarily suspended criminal trials for 30 days and provided that this "period of suspension" was "excluded under the Speedy Trial Act" because "[the] continuances serve the ends of justice and outweigh the interests of the public, of the government, and

---

[3] The majority interprets cases from the Sixth, Eighth, and Tenth Circuits as allowing district courts to grant ends-of-justice continuances based solely on general orders suspending all jury trials.  *See* Maj. Op. 12. None of those cases discuss application of the STA where jury trials have resumed on a limited basis in the same courthouse.  *See United States v. Keith*, 61 F.4th 839, 844 (10th Cir. 2023); *United States v. Leveke*, 38 F.4th 662, 667 (8th Cir. 2022); *United States v. Roush*, No. 21-3820, 2021 WL 6689969, at *1–2 (6th Cir. Dec. 7, 2021).

of criminal defendants in a speedier trial." *See* 18 U.S.C. § 3161(h)(7)(A). Between March and December 2020, CJO 18 was extended on a monthly basis. During the period relevant to this appeal, August through December 2020, CJOs 34, 40, 47, and 50 extended CJO 18 for four additional 30-day periods. Each of these CJOs found that extending CJO 18 "serve[d] the ends of justice under 18 U.S.C. § 3161(h)(7)(A)." During most of the pre-trial period in Orzoco-Barron's case, a "District Trial Reopening Plan" was in effect pursuant to CJO 36, allowing a small number of jury trials to proceed beginning on August 31, 2020. The Southern District conducted a total of fourteen trials under this plan before December 2020.

No developments occurred in Orozco-Barron's case between his arraignment in August and a hearing held on October 21, 2020, when the district court postponed setting a trial date for approximately four weeks because the government had not yet produced documents pertaining to Orozco-Barron's immigration history. On November 13, 2020, the district court entered a minute order providing that "[d]ue to the Court's trial schedule, the Status Trial Setting set for 11/18/2020 is vacated and continued to 12/2/2020." The order also noted without explanation that the time between November 18 and December 2 was excluded under the STA's ends-of-justice provision.

The parties agree that the period between December 2, 2020 and May 19, 2021, was validly excluded from the STA clock due to continuances or pending motions that automatically excluded time. The government assumes for purposes of appeal that the STA clock ran in the 33-day period between May 20 and June 21, 2021. Thus, if the delay between August 13 and December 2, 2020 is counted, a total of 143 days had elapsed on the STA clock by June 21, 2021,

and Orozco-Barron's right to a speedy trial was violated. *See* 18 U.S.C. § 3161(c)(1).

On June 21, 2021, nearly a year after he was first arrested, Orozco-Barron moved to dismiss his illegal reentry charge pursuant to the STA. The district court rejected Orozco-Barron's argument that 143 non-excludable days had passed, ruling that "[a]ll of that time was excluded under the [CJOs]." When the government urged that the court could "take a belt and suspenders approach" by "supplement[ing] its findings," the district court stated that it was "rel[ying] on the pendency of [the] chief judge orders" to deny Orozco-Barron's motion to dismiss. The court briefly explained that the CJOs were issued because various public health guidelines requiring social distancing made it difficult to select a jury or hold trials during the early months of the COVID-19 pandemic. The court acknowledged that jury trials were not suspended altogether between August and late November 2020, but observed that the number of jury trials was limited to three per week, only one of which could be for an in-custody case, and judges had to compete for slots. Based on the CJOs, the district court concluded, "[T]he bottom line was that it was impossible, a fact the Ninth Circuit recognized in *Olsen*, for the Court to convene Mr. Orozco's jury trial any time before [July 13, 2021]."

The district court misread *Olsen*. Our decision there did not endorse a rule that the existence of a CJO alone could justify the indefinite delay of an incarcerated defendant's right to trial. To the contrary, *Olsen* explained that the district court in that case had erred by interpreting the STA to require denial of the government's motion to continue because conducting a trial was not physically impossible during the pandemic. 21 F.4th at 1045.

In *Olsen*, the district court dismissed *with prejudice* serious charges against a physician who was indicted after a six-year investigation on thirty-four counts related to the unlawful distribution of opioids. *Id.* at 1040, 1043–44. The government alleged that Dr. Olsen's distribution of dangerous combinations and quantities of opioids resulted in multiple deaths. *Id.* at 1042. Dr. Olsen was not detained pending trial—in fact, despite the gravity of the charges against him, he had spent no time at all in pre-trial detention—and he had been granted eight continuances, postponing trial for over three years, prior to invoking his speedy trial rights when the COVID-19 pandemic broke out. *Id.* at 1040, 1042. The last continuance prior to the onset of the pandemic was granted despite the fact that the government was ready for trial, and it was granted over the government's objection. *Id.* at 1042.

Relying on the statutory language in § 3161(h)(7)(B)(i), the district court in *Olsen* concluded that an ends-of-justice exclusion was permissible only if trial was literally "impossible." *Id.* at 1043–44. Because a state court across the street from the Central District courthouse in Santa Ana was conducting trials and the federal court had convened a grand jury, the district court reasoned that "it [was] simply not a physical or logistical impossibility to conduct a jury trial" and, without conducting a miscarriage-of-justice analysis, dismissed with prejudice all the charges against Olsen pursuant to the STA. *Id.* at 1043. We reversed and ordered the district court to reinstate the indictment on remand. *Id.* at 1049.

*Olsen* explained that the district court read § 3161(h)(7)(B)(i) incorrectly because that provision directs district courts to consider "'*[whether] the failure to grant*' a continuance would make continuing the proceedings

impossible." *Id.* at 1045. The "impossibility" provision in § 3161(h)(7)(B)(i) actually undercut the district court's decision in *Olsen* because the *denial* of a continuance made a trial on the merits impossible by resulting in the expiration of the remaining time on the STA clock and dismissal of the charges. *Id.* at 1045. Separately, the district court erred by failing to consider whether denying a continuance would "result in a miscarriage of justice." *Id.* at 1046 (quoting 18 U.S.C. § 3161(h)(7)(B)(i)).

The issue presented in *Olsen* was a matter of statutory interpretation, not whether the Central District's general orders could indefinitely suspend jury trials. *See id.* at 1044–45, 1049 (reversing the district court's dismissal because its interpretation of the ends-of-justice provision was incorrect); *id.* at 1053 (Murguia, C.J., and Christen, J., concurring in the denial of rehearing en banc) (observing that the question presented was whether the district court misinterpreted the STA). The district court in *Olsen* disregarded the general orders and relied only on its interpretation of the STA. In stark contrast, the district court in Orozco-Barron's case relied entirely on the CJOs, even though Orozco-Barron was accused of a nonviolent offense, he was jailed the entire time he awaited trial, and jury trials had resumed on a limited basis in the Southern District for most of the pre-trial period at issue. These differences between *Olsen* and Orozco-Barron's case sharply illustrate why case-specific considerations are necessary for the balancing required by the STA.

I agree with the majority that the STA does not require a district court to incant magic words, but our precedent requires that a reviewing court assess the validity of an STA exclusion based on the actual reasons offered for a district court's ends-of-justice conclusion, not post hoc reasons that

could have justified the exclusion. *See Ramirez-Cortez*, 213 F.3d at 1154 (reversing an ends-of-justice exclusion when, after a magistrate judge granted "blanket continuances" for cases pending in a "fast track" program, the district court acknowledged the lack of individualized findings, yet inferred case-specific reasons supporting the exclusion). The district court's order denying Orozco-Barron's motion to dismiss solely relied on the CJO orders suspending jury trials, without considering the specific circumstances of Orozco-Barron's case.

Undeterred by the issue actually presented in *Olsen* and our result there, the majority shortcuts the analysis required by the STA and decides that because CJOs limited jury trials in the Southern District during the pre-trial phase of Orozco-Barron's case, the CJOs alone were sufficient to tip the ends-of-justice balance in favor of continuing the trial. The majority suggests this is so regardless of Orozco-Barron's individual circumstances and regardless of the fact that the Southern District, unlike the Central District in *Olsen*, was conducting a limited number of jury trials during the time period at issue.[4]

The majority's decision is incorrect. The STA's ends-of-justice provision requires "*balancing* . . . whether the ends of justice served by granting a continuance outweigh the best

---

[4] The majority relies on *Olsen* to side-step the Southern District's limited reopening of jury trials, reasoning that "*Olsen* itself recognized that the mere fact that a district court could physically hold a trial (and that other courts were doing so) would not prevent a court from granting an ends of justice continuance." Maj. Op. at 23 n.13. What the majority ignores is that, unlike in *Olsen*, the judges of the Southern District had decided some jury trials could be safely conducted in their own courthouse during most of the pre-trial period at issue in Orozco-Barron's case.

interest of the public and the defendant in convening a speedy trial," which necessitates consideration of case-specific information.      18 U.S.C. § 3161(h)(7)(A);  *see Zedner*, 547 U.S. at 499; *Ramirez-Cortez*, 213 F.3d at 1154. *Olsen* did not disturb, and could not have disturbed, this statutory requirement.  *See* 21 F.4th at 1047.  Indeed, *Olsen* observed that the district court there also erred by failing to consider case-specific factors and suggested a non-exhaustive list of factors for courts to consider when ruling on similar motions.[5]  *Id.* at 1046–47.

## B

The majority fails to explain its departure from our precedent.  It first suggests that the district court could have permissibly relied solely on the CJOs—interpreting *Olsen* to provide that in "unusual cases" like the COVID-19

---

[5] *Olsen* suggested a list of non-exhaustive factors that, in the context of the COVID-19 pandemic, "facilitate[] the proper balancing of whether the ends of justice served by granting a continuance outweigh the best interest of the public and the defendant in convening a speedy trial":

> (1) whether a defendant is detained pending trial; (2) how long a defendant has been detained; (3) whether a defendant has invoked speedy trial rights since the case's inception; (4) whether a defendant, if detained, belongs to a population that is particularly susceptible to complications if infected with the virus; (5) the seriousness of the charges a defendant faces, and in particular whether the defendant is accused of violent crimes; (6) whether there is a reason to suspect recidivism if the charges against the defendant are dismissed; and (7) whether the district court has the ability to safely conduct a trial.

*Id.* at 1046–47.

pandemic, "a district court may properly rely on a generally applicable circumstance to grant an ends of justice continuance, and need not make individualized determinations." Maj. Op. at 27. In support, the majority analogizes to *United States v. Paschall*, 988 F.2d 972 (9th Cir. 1993), where we upheld an eight-day ends-of-justice continuance of grand jury proceedings due to a major snowstorm in Portland. *Id.* at 27 (citing *Paschall*, 988 F.3d at 973–74). We also upheld a two-week continuance in *Furlow*, after Mt. St. Helens erupted. 644 F.2d at 767–68.

*Paschall* and *Furlow* concerned only brief and finite delays of proceedings. The outcomes in those cases cannot be stretched to accommodate across-the-board ends-of-justice exclusions for all pandemic-related STA continuances, for months or even years on end, especially when jury trials had resumed on a limited basis. Because there was no limit to the number of 30-day suspensions the pandemic may have required, the majority's reasoning would allow indefinite suspensions of criminal jury trials based solely on blanket general orders. As *Olsen* recognized, if the pandemic continued long enough, the need to honor speedy trial rights could require dismissal of at least some cases. *See Olsen*, 21 F.4th at 1052, 1057 (Murguia, C.J., and Christen, J., concurring in the denial of rehearing en banc).

The majority's second theory is that the district court *did* in fact "consider[] the relevant statutory and non-statutory factors when deciding to grant a continuance." Maj. Op. at 21. The record shows otherwise. The district court relied solely on the CJOs in place during the disputed time period and its understanding that *Olsen* sanctioned reliance on the CJOs alone. Critically, the district court's ruling does not reflect consideration of Orozco-Barron's detained status

during the pre-trial period. *See Torres*, 995 F.3d at 704 ("[W]e can envision no circumstance in which a district court could properly fail to consider a detained defendant's status when addressing a motion to continue the trial."); *see also Olsen*, 21 F.4th at 1063 (Bumatay, J., concurring in the denial of rehearing en banc) ("[T]his case would be very different if Olsen had been detained during the COVID-19 pandemic and had suffered the deprivation of his liberty while the California federal district court shut down indefinitely.").

Finally, the majority opinion posits that appellate courts may consider case-specific "non-statutory factors on appeal in the first instance." Maj. Op. at 26. The majority relies on *Olsen* for this assertion, but *Olsen* did not signal that an otherwise deficient ends-of-justice exclusion could be affirmed based on post hoc reasoning. Rather, *Olsen* discussed case-specific information raised by the government in its motion for a continuance when explaining that the district court erred, in part because it failed to consider that highly relevant information when conducting ends-of-justice balancing. *See* 21 F.4th at 1042–44, 1046–48. The majority's suggested approach would amount to harmless-error review, which the Supreme Court has cautioned does not apply to appellate review of ends-of-justice exclusions. In *Zedner,* the Supreme Court held that an ends-of-justice exclusion cannot be justified by post hoc reasoning:

> Applying the harmless-error rule would . . . undermine the detailed requirements of the provisions regulating ends-of-justice continuances. The exclusion of delay resulting from an ends-of-justice continuance

is the most open-ended type of exclusion recognized under the Act and, in allowing district courts to grant such continuances, Congress clearly meant to give district judges a measure of flexibility in accommodating unusual, complex, and difficult cases. But it is equally clear that Congress, knowing that the many sound grounds for granting ends-of-justice continuances could not be rigidly structured, saw a danger that such continuances could get out of hand and subvert the Act's detailed scheme. The strategy of § 3161(h)([7]), then, is to counteract substantive openendedness with procedural strictness. This provision demands on-the-record findings and specifies in some detail certain factors that a judge must consider in making those findings. Excusing the failure to make these findings as harmless error would be inconsistent with the strategy embodied in § 3161(h).

*Id.* at 508–09. Our circuit precedent also requires that the district court's rationale for an ends-of-justice exclusion be explicitly set forth in the district court record, not supplied by the reviewing court. *See United States v. McCarns*, 900 F.3d 1141, 1144 (9th Cir. 2018) (providing that the district court's "reasoning [must be] sufficient to justify excluding the continuance from the Act's seventy-day limit"); *Ramirez-Cortez*, 213 F.3d at 1154–55 (holding that a district court could not supply findings that might have supported an ends-of-justice continuance when a magistrate judge granted the continuance without making the requisite findings in the first instance).

\* \* \*

When assessing Orozco-Barron's STA claim, the district court did not make case-specific findings and relied solely on CJOs that applied to every defendant in the Southern District of California. Yet jury trials had resumed on a limited basis. Given the importance of the speedy trial right and the circumstances of this case, I conclude that the STA required the district court to make case-specific findings. The district court may have permissibly reached the same result if it had conducted the required balancing, but we are not permitted to "speculate as to the 'findings' that might support an 'ends of justice' continuance" on appeal. *Ramirez-Cortez*, 213 F.3d at 1155. I would therefore reverse the order denying Orozco-Barron's motion to dismiss under the STA, and remand for the district court to determine whether the dismissal should be with or without prejudice.[6]

---

[6] Even if an STA motion is granted and charges are dismissed, whether charges are dismissed with prejudice is a separate question. At oral argument in Orozco-Barron's case, defense counsel conceded that the government would have had time to re-indict Orozco-Barron if his charges were dismissed without prejudice. *See* 18 U.S.C. § 3162(a)(2) ("In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."); *United States v. Taylor*, 487 U.S. 326, 333–34 (1988) (holding that the court should also consider prejudice to the defendant from the delay).